The opinion of the court was delivered by
Miller, J.
The defendants appeal from the judgment annulling the act for the drainage of the city, and hence denying their corporate capacity claimed under the act. Session Acts 1896, No. 114. The suit is brought by the Attorney General under the provisions of law, which, taking away the writ of quo warranto as the remedy for the unwarranted exercise of public office, substitutes the appropriate procedure by the Attorney General to test the right to exercise corporate functions claimed under any law of the State. Revised Statutes, Secs. 2593, 2596, 2597, 2603; Railroad vs. Town of Kentwood, 49 An., not yet reported.
The act assailed is to effect the drainage of the city; provides for a drainage board of nine; the mayor, the chairman of designated committees of the council, the presidents of the Board of Liquidation of the City Debt and Orleans Levee Board, and two others to be selected by the designated members; the board thus constituted is to have succession and other usual corporate powers to effect the drainage; to accomplish the work the board is authorized to contract for the materials, labor and supplies requisite; employ engineers and other needful agents and do all things requisite for the drainage of the city in accordance with the plan adopted by the council; the act sets apart for the expense of the work the proceeds of sale of *1201 city franchises, and that part of the fund now in the hands of the Board of Liquidation and to accrue after 1st January, 1898, heretofore dedicated to public improvements under existing laws and constitutional amendments (Acts 1892, p. 144) ; to procure means, in advance of realizing the resources pledged by the act, the power to issue bonds bearing interest, payable in forty years, is conferred on the board, the payment of which is secured by the means the act provides; in aid of the drainage the power to expropriate is given, the right to connect the system begun in New Orleans with the waters of the adjoining parish is conferred: to make the drainage more efficient the act requires the co-operation of the Orleans Levee Board, the Board of Liquidation, and these bodies along with the city are represented in the composition of the Drainage Board.
Two grounds to annul the act are alleged in the petition and sought to be supported in argument; it is charged the act is local and special legislation creating a corporation within the prohibition of Art. 46 of the Constitution, and because of the alleged infringement by the act of the right guaranteed by Art. 258 of the Constitution to-the citizens of New Orleans of appointing the officers to conduct the-police administration of the city.
There are two articles in the Constitution relative to local and special legislation. One is permissive, provided notice of the intended law is given, and provided the subject is not embraced in the-other article, absolutely prohibitive of such legislation on enumerated subjects. Arts. 46 and 48. The permissive Art. 48 is not involved in this discussion. The subject of the act is claimed to be within the scope of the prohibition in Art. 46 of local or special legis- ■ lation creating corporations or amending charters. In Art. 46 there-is the suggestiveness in the enumeration of the subjects with reference to which legislation is prohibited, of the legislative appreciation of the scope of the prohibition. Thus laws changing the names of persons; for the education of children; granting divorces; giving-privileges or monopolies to individuals, and similar acts commonly known as private bills, are forbidden. These prohibitions have no-application to this controversy, but they tend to illustrate the general bearing of the inhibition as the framers of the Constitution-understood it. In connection and along with private bills the article-forbids the legislative creation of corporations and amendments of charters, and it is this prohibition, accompanied as it is with the- *1202 ■clearly expressed proviso not to apply to the corporation of this city, that the plaintiff conceives, annuls the drainage act.
It seems to us the appropriate sphere of this prohibition of the creation of corporations and amendment of charter can be readily appreciated without denying the legislative power to deal with the drainage of this city. The great mass of legislation filling our statute books of earlier years, of special acts of incorporation for each and every village or town, or private individuals seeking corporate privileges, at every session, the equally numerous demands on the Legislature for amendments of particular charters, public or private, were the prominent evils that the inhibition under discussion was designed to correct in future legislation. The response to the constitutional prohibition is, in our present general statutes, for the formation into corporations, of all towns or villages complying with prescribed conditions; other general laws conferring powers deemed essential for all subsisting municipal corporations; the statute affording all private corporations the means pointed out in the act of amending their charters and similar legislation. Acts 1880, No. 125; Act No. 49, p. 111; No. 26 of 1882; Act 150 of 1890, Sec. 14. Now does the general import conveyed by this prohibition in Art. 48, aided by the illustration of the purpose in view, and by the legislative interpretation since the Constitution came into existence, afford the basis for this court to hold that this inhibition directed against private bills and special legislation as to corporate rights strips the Legislature of the police power to provide for the drainage ■of this city.
The argument, In great part, is directed to the proposition that the drainage commission possesses corporate powers, and by the - usual tests, as well as by the terms of the act, is constituted a corporation; hence, it is argued, the act is brought clearly within the prohibition of the creation of corporations by special act. But passing over all the discussion to show that the commission is a •corporation, and giving the argument on that point its full force, does it follow that the inhibition as to the creation of corporations of undoubted usefulness and applicability for the purposes, we think, were in the contemplation of the Constitution, divests the Legislature of that power, the exercise of which is manifested by this drainage act? The attribute of government we call the police power, resides in the State, can not be relinquished by the Legislature, and *1203 if it can be surrendered by the organic law, at least, the abandonment to command judicial acceptance should find the clearest ■expression. Are we to take for that expression the constitutional provision against creating corporations, designed, in view, for purposes entirely distinct from the surrender of a great power ■of government? The intimate association of drainage with the public health is obvious. Ip. our earliest legislation the drainage of this city was deemed a measure of vast importance to the State and ■city. Acts 1835, p. 168. If that was the view then, there is the added force derived from our experience that this city is the gateway through which, aided by local conditions, not the least of which is bad drainage, diseases of foreign origin may, and medical scientists affirm, have become epidemic here and propagated throughout the State. It seems to us that the drainage act viewed as a health measure must be deemed within the legislative competency, not-surrendered or impaired by the constitutional prohibition of local or special legislation respecting corporations.
Again, the statement in the pleadings, enforced in the argument, is that the prohibition of creating corporations or amending charters applies to this city, and this drainage act is not within the proviso. The result of the statement and argument is, as we appreciate it, that the Legislature is prohibited from giving New Orleans any legislation creating a corporation to conduct its affairs or amending its charter.. There stands in the Constitution the inhibition of legislation ■creating corporations or amending charters, and the argument is, the drainage act is within the prohibition and not saved by the proviso. Without the aid of Art. 253 giving the Legislature plenary authority in respect to this city, the argument fails that the prohibition of Art. 46 applies to this city and defeats the drainage act. If it prevents the draining legislation it is an impediment to the charter under which we live, and was fatal also to that of 1882. The conclusion to which we think the argument leads answers it. To guard against any such conclusion the framers of the Constitution ex industria added the proviso: “Not to apply to the city of New Orleans,” and the plaintiff’s argument asks us to treat the proviso as ineffective. We have considered the prohibitory part of ‘Art. 46, in its supposed inapplicability to this city, as if there was no proviso. In that aspect our conclusion is, the power to enact the drainage act was in the Legislature, with the proviso, it is made clearer that the act is not within the prohibition of that article.
*1204 The right of the citizens of New Orleans to appoint the officers for the administration of the government of this city has been, with some variance of language, secured by every Constitution of this State save that of 1868. Constitution of 1812, Art. 6; Sec. 23 of 1845; Act No. 128 of 1852; Act No. 124 of 1879. We are asked to construe this provision so as to deprive the State of any power to enact this drainage. The argument is that under the Constitution every function of the city government is confided to the officials selected by the citizens, and reference is made to the city charter to show that drainage is one of these functions. The framers of the Constitution manifested their appreciation of the right of local government which should vest in the citizens of this city. But the question is whether the right thus conferred on the citizens, does not admit of qualifications when sought to be applied to governmental functions exerted within the limits of the city, but of the highest importance and of more than local concern. Instances will readily occur of legislation in reference to subjects of deep interest to the State and city and providing State instrumentalities to carry into effect in this city such legislation. It has never been supposed that the State has parted with all legislative control of such subjects, by the provision in the Constitution giving to the citizens of New Orleans the appointment of the officers required for the police administration of the city. The police power given to the State to protect the public health, we can not appreciate, is to be abridged by a constitutional provision dealing with the ordinary functions of the police administration of the city, and confiding such duties to the agents selected by the citizens, This drainage act by reason of the nature of its subject; the scope of the act proposing a great public work begun in one and continued in the adjoining parish, and in view of the means and agencies not within the control of the city, but within the power of the State and combined by this act, suggest forcibly that such a legislative act is an exertion of the power which necessarily must reside in the State, and is not divested by the provision in the Constitution for the local government of this city. Our past legislation is quite instructive as to the scope of the provisions urged in this case as utterly excluding the legislative control of drainage by the instrumentalities deemed most efficient in the legislative judgment. It is not at all novel in our legislation to appoint State officers for the performance of functions in this city *1205 relating to subjects of more than the interest attaching to ordinary police functions of the city officials. From an early period we have had the legislation providing for harbor-masters and wardens with duties relating to the commerce of this city, and to be appointed by the Governor of the State. In all the duration of this legislation there has been the constitutional provision for the appointment by the citizens of their local government. Yet except in the recent discussion in the Dock Commission case, no one supposed that functions like those of the harbor-masters and wardens connected with the commerce of this city might not be confided to State officers. Our reports show contentions as to the appointment of such officials, but the gubernatorial power to appoint was never contested on the ground that police functions in this city embraced duties pertaining to subjects of general importance like those of the wardens and harbor-masters and others that are readily suggested. Revised Statutes, Secs. 1679 et seq.; Nicholson vs. Thompson, 5 Rob. 367; Ivy vs. Lusk, 11 An. 486. The Legislature in 1857 created the office of Superintendent of Elections, to be appointed by the Governor, charged with police duties of all elections in this city. The legislation was sustained by the courts, notwithstanding the constitutional provision for the local government of this city by officers selected by the citizens. 13 An. 304. We have the laws in the interest of public health and providing the Board of Health with the functions to be exercised in this city, and the appointment of this board the Governor shares with the council. Yet this legislation has stood for years with no question there was any clash with the article of the Constitution giving to the citizens of New Orleans the appointment oftheir local officers. Revised Statutes, Secs. 3034 et seq. The illus - tration from our legislation might be extended to show the obvious limitation on the constitutional provision invoked in this case as annulling the drainage act, because to be carried into effect by officials designated by the Legislature. The lesson of our past legislation is that the legislative power over some subjects, and the right to designate the officials and instrumentalities by which such legislation is to be executed in this city, is wholly unimpaired by the constitutional grant of appointive power to the citizens of this city. We think the drainage proposed by this act of 1896 is within the legislative power not surrendered by this grant to the citizens. Our jurisprudence on this question is in aid of the validity of this act. In an early case *1206 the Supreme Court had occasion to consider this provision of the organic law in reference to the appointment of the officials of New Orleans in connection with a franchise of a corporation to cut a canal within the city limits. The precise point in this case, it is true, was not at issue. The canal was to improve the water navigation within the limits of the island of New Orleans, as it was commonly called at that period. There was an amendment to the charter of the corporation after the adoption of the Constitution of 1812 containing, in effect, the same appointive right conferred on the citizens of this city as that of our day. It may be said that cutting the canal through the city limits was not a police function. Perhaps not. The court in that case upheld the legislation creating this corporation with functions to be performed here by corporation officials not appointed by the citizens, and held there was no conflict between the right of selecting their city official given to the citizens, and the Legislature’s designation of agents to fulfil the object of the canal corporation. The opinion in that ease is quite pertinent on the point that the delegation of the appointive power to the citizens did not divest the reserved power of the State to provide legislation for New Orleans, designed to promote its welfare. Bank vs. Navigation Co., 3 An. 307.
But the litigation that arose under the drainage act of 1835 is of obvious pertinence and of controlling weight in this controversy. See Acts 1835, 168. The preamble to the act asserted the drainage of the city to be of paramount importance to the city and State, as a measure designed to promote the public health, augment the population of State and city and the prosperity of both. It organized a corporation located in this city with ample powers for the work, including the right to expropriate, lay and collect taxes and issue bonds. The constitutionality of this' act was vigorously contested. While it is true that whether the drainage taxes could be imposed exclusively on the property drained, or were not within the purview of the articles of the Constitutions of 1845 and 1852, requiring uniformity of taxation, was one of the questions in the case, it is equally true that the objections urged to the present drainage act were advanced in the former drainage case. The original opinion disposed of the case on the ground of unequal taxation. The dissent was in opposition to that ground, but also withdrew the act from the operation of the article in reference to the local. govern *1207 ment of the city. In the final opinion' the chief justice, as the organ of the court, dealing with the objection like that urged here, held that drainage was not within the scope of the constitutional provision, guaranteeing to the citizens of this city the right of local government. See Drainage Company praying, etc., 11 An. 839, 841, 348, 370. Oases involving the right to collect these drainage taxes have been before the courts time and time again, since this decision made nearly half a century since. If the act was still open to the objection that it conflicted with the appointive provision conferred on the citizens of this city, certain it is that no such objection finds a place in any of the elaborate discussions in the more recent drainage cases. We observe the criticism in plaintiff’s briefs of the reasoning for the conclusions in the 11 An. The guides of that day may not be in accord with our lines of thought. Still, the decision remains that without the least infringement of the constitutional provision invoked in this case, it is within the legislative competency to pass an act to drain the city by the aid of a corporation. Such a. corporation this act creates. We think that in principle the act is supported, and besides there is the support, in our opinion, the act derives not only from express determination, but by the analogies afforded by statutory interpretation and our jurisprudence.
This case has been brought here near the close of a busy term,, a speedy decision asked, and amid the pressure of other business entitled to preference, we have given the question careful consideration. We have not gone over in this opinion all the authorities cited, nor dealt with the fullness that all parts of the argument may, perhaps, be deemed to have required. But the argument and all the authorities have had our attention, and our opinion announces the views we think determinative of the issues.
It is therefore ordered, adjudged and decreed that the judgment of the lower court be avoided and annulled, and it is now ordered, adjudged and decreed that the plaintiff’s suit be dismissed.
Nicholls, O. J., absent; ill.