## No. 13,011.

Mrs. KATE R. McKEON vs. SUMNER BUILDING AND SUPPLY COMPANY.

51 1961
52 1587

### SYLLABUS.

1.  NOT A SPECIAL OR LOCAL ACT.—Act 180 of 1894 is not obnoxious to Art. 46 of the Constitution, as its scope and effect do not come within the prohibition of the article.

2   A GENERAL LAW.—The law attacked on the ground of unconstitutionality is not, as charged, a local or special law indirectly repealing a general law.

3   NOTICE.—The law not being local or special, there was no necessity of giving thirty day's public notice prior to its passage.

ON APPEAL from the Civil District Court for the Parish of Orleans, *Ellis, J.*

---

*W. S. Benedict,* for Plaintiff and Appellee.

---

*Rice & Montgomery,* for the Sumner Supply Co., Ltd., and the Lambou and Noel Lumber and Manufacturing Company, Limited, Defendants and Appellants.

---

*Edwin T. Merrick, as Amicus Curiae.*

---

Argued and submitted April 4, 1899.
Opinion handed down April 17, 1899.
Rehearing refused June 26, 1899.

---

The opinion of the court was delivered by

BREAUX, J.   This is a suit brought by plaintiff against a number of defendants, for judgment ordering the cancellation of their liens recorded at their instance against her property.

The facts are, that plaintiff contracted in writing with a builder to construct and erect a building on her property for three thousand, nine hundred and seventy-five dollars, to be paid in installments; the last installment to be paid fifteen days after completion and delivery

of the building. All the installments were paid. Plaintiff failed to have the contract recorded, and she required no bond from the contractor. A number of claims were registered as liens upon her property.

J. B. Schneider, the builder, who was the debtor primarily of the parties who had registered their claims, went into insolvency.

At this phase of affairs, plaintiff brought this suit against each of the creditors of Schneider, who claimed liens on her property, alleging that Act 180 of 1894, under which they asserted a right, was null and void, being special and local and not general, in violation of Articles 46, 47 and 48 of the Constitution, as not having been passed after notice required prior to the enactment of special and local legislation.

The creditors, made defendants, severally answered, claiming the amount due them by Schneider, and a lien for its payment on plaintiff's property.

The statement of facts shows, in addition to the foregoing, that the claim of the Sumner Building and Supply Company, Limited, was for building supplies furnished Schneider and used on the building.

The judge of the District Court, in a carefully prepared opinion, reviewed the grounds presented, and decided that Act 180 of 1894, is unconstitutional and void, and that defendants' claim against plaintiff, based on that act alone, is without right. Their demands were rejected.

From the judgment, the defendants appeal.

In the first place, we deem it proper to summarize the statute attacked. It requires that any person who makes a contract for an amount of one thousand dollars, or any amount exceeding that sum, with a builder or contractor, shall require of the builder or contractor solvent security in a sum equal to the amount of the contract for the payment of material men and workmen, who shall have a right of action against the security; and should the owner fail to require security of the contractor and to record the contract, with the bond and security, in the mortgage office, within a week after the contract is signed, and before the work is commenced, the owner shall be liable for all balances due the workmen and material men; and, further, they have, under the terms of the statute, a lien on the land and building, if they record their sworn bills, whether the original

contract is recorded or not; provided, the bond shall not continue in force for more than ninety days after the building has been completed or repaired; and provided further, that all mortgages and privileges recorded against the land and building, previous to signing the contract, shall have precedence over all other liens. This statute is applicable to all cities of a certain class having more than fifty thousand inhabitants. The number, by a subsequent statute, was reduced to not less than ten thousand inhabitants.

This statute, on the grounds before stated, plaintiff insists is unconstitutional.

Upon this state of the facts and the law, the issues arise between the plaintiff and the defendants, the former denying that defendants have a cause of action. This denial is based, in the first place, on the theory, that, in passing the act to which we before referred, the General Assembly passed a local or special law "providing or changing the methods of collection of debts." (Art. 46 of the Constitution.)

We find it obvious that two conditions must arise in order to justify the conclusion, on the grounds alleged, that the statute violates Art. 46 of the Constitution.

It must appear, in order to sustain the objection, that the statute is "local" or "special;" or that it makes provision for collecting debts or changing the methods of their collection.

1st. We think it obvious that the statute is neither "local" nor "special;" and makes no provision, as charged, for collecting debts, or changing the manner of effecting collection. The intention was, as relates to statutes for collecting debts, or changing the manner of their collection, we gather from the language used, to uphold uniformity in legal procedure throughout the State, and to prohibit the forms of law established for the good administration of justice from being limited to a locality, or made to subserve personal or special interest. It excludes from the scope of special or local legislation formalities intended, or rules of practice passed, to protect the rights of persons. The rules, under the Code, regarding citation, appearance, judgment, appeal, must be general and not special. That is the extent of the Constitutional limitation.

The statute assailed in this case is not one at all relating to civil actions; it appertains to contracts for building and additional security to workmen and material men.

The objection to the statute, on the ground that it is obnoxious to Article 47 of the Constitution, is founded upon the mistaken assumption that it is a local or special statute.

The moment it becomes obvious that this assumption is erroneous and that the statute is not local or special, the objection made here must fall; there remains nothing further to be considered.

A classification based on contracts of, and exceeding, one thousand dollars, in cities of not less than the number of inhabitants stated, does not render the law local or special. Such a classification has frequently been recognized as possible, under Articles similar to those in our present Constitution. With the exception of the lower limit in the amount and the lower limit of the number of inhabitants in cties in which the statute was made imperative, the statute is general.

If a law is limited in some minor details, deemed proper by the legislator in carrying out a public policy, but otherwise general in its application, it is neither local nor special.

Here it is operative in every city of a certain specified number. It embraces those that have now, or will have, the stated number, in the future.

As to the amount, or lower limit of the building contracts, it is also general, save as to an amount which the legislator must have considered comparatively inconsiderable.

A law may be general without being universal.

2nd. Plaintiff's last pleaded objection relates to public notice. It presents a question which has been passed upon in a number of cases. The "local" or "special" character of a law in the sense of the Constitution is not a new subject. Plaintiff insists that the statute 180 of 1894 is "special" or "local," and that the enactment by the legislature should have been preceded by a thirty days' notice, the notice requisite before adopting a statute, which is "special" or "local." As relates to the objection that it is local, for the reason that it is limited (plaintiff asserts) in its operation to cities of a stated number of inhabitants, and to contracts of a thousand dollars or more, classification is not prohibited.

The Supreme Court of Ohio in a similar case said: "A constitutional provision that requires all laws of a general nature to have uniform operation throughout the State is complied with in a statute applicable to all cities of a certain class having not less than one

hundred thousand inhabitants, though, in fact, there be but one city in the State of that class." 18 Ohio, N. S., 85.

This decision is sustained, we think, by the weight of judicial authority, and it is a complete answer to the objection here urged by plaintiff.

These are the issues presented by the pleadings. This court has repeatedly decided that the pleadings should set forth the grounds upon which a law is attacked.for unconstitutionality.

We, however, extended our examination further and considered the different points argued in support of plaintiff's position. After attentive consideration, we.are not inclined to the opinion that the statute. attacked is unconstitutional on any of the grounds argued at bar and in the briefs filed.

It was argued in brief that the act is broader than the title, and, in consequence, void. Similar objection to the title has been frequently made, and there are, in consequence, many decisions upon the subject.

The Constitutions of a number of States contain similar provisions to those contained in the Constitution of this State regarding the necessity of expressing the object of the act in the title. ·

The weight of the decisions under these provisions is not favorable to a close or strict construction, as relates to the question involved, for the very good reason obviously, that a close construction might result in setting aside many laws in our statute book not considered unconstitutional. In carrying out this view, the Supreme Court of this State has decided, in substance, that it is sufficient if the title of the act is framed in substantial accordance with the clause of the Constitution, requiring that the title should express the object of the bill when it is offered, and of the statute after its enactment. The jurisprudence is similar in courts of other States of the country. Thus, an act, in general terms, "to establish a police government for the City of Detroit," was within the purpose of the Constitution. The act, under that brief title, provided for the police government of a city; officers were authorized to be appointed, as well as a number of duties created, and other general objects, not foreign and incongruous to the object announced in the title, were accomplished. The court held that the act was constitutional. The People vs. Mohany, 13 Michigan, 496.

In Cooley on "Constitutional Limitations." p. 176, we find, in the following, a summary of views expressed in a number of decisions:

"The generality of a title, is, therefore, no objection to it so long as it is not made to cover legislation incongruous in itself."

The title of the statute in the case before us, is general; there is enough, however, to sufficiently indicate its purpose. While every act must stand upon the title as passed, and no amendment can be made to cure a defect growing out of its deficiency as to its title, subsequent action, extending the effect of the statute, as was done in this case, shows that the legislature did not consider the statute, as originally passed, defective, or that any concealment of the object to pass the statute had been practiced, as relates to title. *Had the legislature been taken by surprise, it would not have, in all probability, enacted the amending statute 123 of 1896. If the original law had been adopted by them through dexterous management of interested persons and by concealing its intention, the legislature had long warning time between the dates of the two statutes. "The purpose of the provision is accomplished, when, in general terms, the object of the statute is indicated by the title. To require every end and means necessary and convenient for the accomplishment of this general object to be stated in the title, would greatly embarrass and delay legislation." Ib. 175. See also, Oil Company vs. Matheson, 48th Ann., 1323, in which a question very similar was decided. Municipality vs. Michoud, 6th., Ann., 605.

Moreover, the chief object being to prevent surprise and insure deliberation before passing acts, frequently the broadest and fullest title would not accomplish the purpose and prevent surprise.

We quote the following on "Legislation" by a French author:

"Mais peut on se dissimuler l'influence et l'utilité de ce concert deliberé, de cette puissance invisible, par laquelle sans secousse et sans commotion les peuples se font justice des mauvaises lois et qui semble proteger la société contre les surprises faites au legislateur et le legislateur contre lui même."

The remedy against the surprise referred to above is by legislation and not by forced judicial construction.

The right of property and of person gives rise to another ground for argument by counsel for plaintiff, though not specially pleaded.

The owner, counsel contends, as relates to right of person or to property, not having contracted with the creditors of the builder, may well claim that it is a hardship to hold her bound by contract to which she is not a party.

The principle is correct; usually one is not bound save as he

chooses to bind himself. Here, this right, as we interpret, is not impaired by the statute; the owner is free to contract as he pleases. The statute only points out, that the amount of the indebtedness, under the contract, (not one cent more) shall be paid as indicated; i. e., the labor and the price of material, before any amount be paid or advanced to the contractor or builder.

As related to the workmen, provision was made by Act 134 of 1880, that in the event of non-payment of the laborer for his work, as just stated, he had a privilege under registry of his claim against the owner.

The law, giving the builder's right to the laborer and material man to hold the owner of the property responsible, by serving their attested account upon the owner, has never been questioned. The workmen's toil being considerable and their earnings frequently small, the legislature, by the act of 1894, deemed it proper to secure their payment, first by privilege, and afterward, by a bond. To this there can be no serious objection. The material man has managed, in some way, to receive equal attention. Why it is, is no concern of ours, as interpreters of the legislative will, as expressed in the statutes. We are not asked to separate the two, and declare that the statute is constitutional as to the former, and not as to the latter; although, as to the reason of the statutes, they perhaps should not be considered as being on the same plane.

To the extent that a privilege is granted or a bond is required, to secure that much of the contract needful to pay claims of laborers and material men, the legislator has made his (the owner's) property responsible as far as relates to the privilege, and, personally, if he fails to require a bond. He is not the guarantor of his builder, his whole responsibility is limited to requiring a solvent bond under the contract.

If the bond could not be required, because it is not the debt of the owner, but of the contractor, for the same reason a privilege on the property of the owner, who is not debtor, would fall. That view has never been seriously entertained by any one.

In order to avoid the similarity between the two rights, privilege or recovery on bond, it is contended that there is a great difference, inasmuch as privilege arises out of an existing debt for work actually performed and not for anything to be done in futuro. The argument will not hold, in our view. Privilege has no date. It takes its rank by reason of the favor granted by the legislator to the claim without

reference to date. It is frequently made retroactive in its effect Thus, the funeral charges, the last possible as relates to date, none the less prime all other debts. The same regarding the workmen's privilege; it primes mortgages and certain other privileges, and is retroactive.

The bond required is not retroactive and binds no one save for work actually done. It is intended to enable the workman to collect his own to the extent the owner is bound. It operates as a substitute for garnishee proceedings.

"By implication, the contractor is the agent of the owner, and by implication the owner consents to the privilege of the workingman on his property to the extent that he owes the contractor." Jones vs. Great Southern Fire Proof Hotel, 86 Fed. Reporter, 378.

The Legislature has embodied in the statute here attacked the implied agency referred to in the quoted passage, and the supposed consent of the owner by requiring a bond to insure payment, although there is no contractual relation with the owner.

*"Some of the statutes sought to diminish the grasp of this legislation regarding liens by limiting the aggregate of such liens to the original contract price, or by providing for a contractor's bond for the benefit of the owner with summary remedy thereon or by both. In the same decision the contractor is declared to be agent of the owner, and as such authorized to employ labor."* Ib. 379.

Thus, we see, that, from the point of view of this decision, the bond is given as much for the protection of the owner as to secure the workman.

Right here, we must say that, if it be correct to hold, as has been held in a number of decisions, that a statutory lien may be created in respect to future contract, it follows that bond to secure work to be done may be required, as it is by statute 180 of 1894.

Statutory liens have been declared constitutional in many of the States; it follows that statutory bond is equally as legal.

The decision from which we have just quoted reviews the jurisprudence of the different States, and from it we gather that the constitutional invalidity of such statutes has never been judicially declared. The jurisprudence of France, under articles similar to those of the Civil Code of this State, arrives at the same conclusion from another direction.

"Les ouvriers sont donc les ayans cause de l'entrepreneur." Laurent, vol. 26, p. 96.

Again, as relates to both the owner and the builder: "Les ouvriers ne sont pas des tiers." *Ib.,* Vol. 26, 96.

In this view, the protection and the security are about the same under the jurisprudence of both countries.

To say the least, the question is not at all free from doubt. Although we have followed the questions involved to this point and have given them our most careful attention, we deem it advisable in this case to rest our conclusion upon the issues presented by the pleadings arising under the articles of the Constitution before cited.

With reference to doubt, it suffices to say, that doubt regarding the constitutionality of a law will not warrant setting it aside as unconstitutional. It must be made quite evident that it is unconstitutional, in order to warrant interference by the judiciary.

We are constrained to remand this case for the reason, chiefly, that further evidence regarding, at least, some of the claims of defendants, should be introduced.

We are informed that Schneider, the contractor, went into insolvency, and that in his schedule all the parties to these proceedings were placed as his creditors. There was property surrendered.

The District Judge in his reasons for judgment states that "their general accounts, debits and credits, indicate that they had little reference to localities or buildings where the things furnished were to be used. In other words, on general account, he had, in the course of his business for years past, bought from them, paying and receiving credit from time to time, and without reference to where or from whom he received the money with which he paid. All dealt with Schneider on his personal responsibility."

Unless defendants make it appear how much specifically is due for each material furnished, they cannot recover. We, therefore, remand the case only to the extent that the respective claims of each defendant should be proven and required identification made and proper credit given.

For reasons assigned it is ordered, adjudged and decreed that the judgment appealed from be annulled, avoided and reversed.

It is further ordered, adjudged and decreed that the case be remanded to hear further evidence regarding the claims of defendants, and that proceedings in the case, needful to the determination of these last stated issues regarding the amount of defendants' claims, he had.

It is ordered that appellees pay the costs of appeal.

The costs of the lower court to abide the final decision of the suit.