(123 So. 310)

No. 29893.

## STATE v. MALORY.

May 20, 1929. Rehearing Denied June 17, 1929.

Percy Saint, Atty. Gen., E. R. Schowalter, Asst. Atty. Gen., and L. C. Blanchard, Dist. Atty., and A. M. Pyburn, Asst. Dist. Atty., both of Shreveport (Wilson & Abramson; of Shreveport, of counsel), for the State.

Malcolm W. Feist, of Shreveport, for appellee.

THOMPSON, J. The state appeals from a judgment which dismissed the charge against the defendant on the ground that the statute under which he was prosecuted was unconstitutional.

The charge is that the defendant was engaged in doing plumbing work in the city of Shreveport, a city having more than 10,000 inhabitants, without having obtained a certificate from the state board of journeymen plumbers.

Act 248 of 1924 created a board of examiners known as the state board of examiners of journeymen plumbers. This board was authorized to adopt certain tests of qualifications to be possessed by any person engaged in doing actual plumbing installations or plumbing work of any character, and to issue licenses to such persons as met the examination requirements upon the payment of such a reasonable fee as the board may fix. Provision was made for renewal of the license from year to year upon payment of the fee, the fees not to exceed the amount required to maintain and support the expenses of the board.

Section 3 provided that no person should be permitted to engage in doing plumbing work of any character unless he possessed the certificate required.

It was provided that nothing in the act shall be construed as to require master plumbers otherwise qualified, engaged in the

said business, to possess the certificate required of actual or journeymen plumbers.

It was also provided that the act was not to apply to plumbers' apprentices registered by the board, nor were the regulations of the board to be so construed as to conflict with any rules adopted by the sewerage and water board of New Orleans, nor to conflict in any way with certificates then being issued to master plumbers by the sewerage and water board of New Orleans or the sewerage and water board or any other department of any city possessing a population of more than 10,-000 inhabitants, and that the act shall apply to cities of more than 10,000 inhabitants.

■ There are two principal grounds of attack on the statute. The first is that the title is not such as is required by the Constitution, and the other is that the act violates the Fourteenth Amendment to the Constitution of the United States.

The complaint against the title is that it indicates an object different from that contained in the act.

1. That the title provides for several boards, that is to say, a separate board for each city of 10,000 inhabitants or more, while the act itself provides for only one board of examiners.

2. That the title contains two objects, that of creating a board of examiners of journeymen plumbers and to regulate the pursuit or occupation of plumbing.

The trial judge did not consider there was any merit in the attack on the title of the act, nor do we.

The title provides for the creation of a board of examiners of journeymen plumbers "in cities of over ten thousand inhabitants" and to regulate the pursuit or occupation of plumbers; providing for the licensing of plumbers and penalties for violating the act.

It is the use of the words, "in cities of over ten thousand inhabitants," that gives rise to the contention that the title indicates an object to create a board of examiners for each city of the size named.

The title is not susceptible of that construction. The title in our opinion clearly indicates the purpose of creating one board with jurisdiction in, over, and for cities of over 10,000 inhabitants and not a plurality of boards, one for each of such cities. If it had been in the mind of the lawmaker to have as many boards as there are cities of the size mentioned, it seems to us it would have been the most natural thing to do to say so in the title. The construction attempted to be put on the words of the title is obviously unreasonable.

Nor does the title embrace two objects, one creating a board and the other regulating the occupation of plumbing. There is but a single purpose indicated in the title, that of regulating the plumbing business, and the board of examiners provided for is the instrumentality by which the regulation and control of the business is to be accomplished. In other words, the creation of the board is but the means to the end to be attained.

■ The statute is said to violate the Fourteenth Amendment to the Constitution of the United States, in that it deprives defendant of his liberty and property without due process of law; that it attempts to make arbitrary, unequal, and discriminating classifications and by discriminating improperly as to persons on whom the penalty is sought to be imposed, and as to localities where the act is to be operative.

It was on the last-mentioned ground, that is, unreasonable discrimination, that the lower court declared the statute unconstitutional.

It may be stated as a correct legal proposition that the state through its Legislature in the exercise of its police power may enact

whatever legislation is necessary or deemed to be necessary for the public health, good order, and safety of society.

"Whatever legislation is called for by the public welfare is within the scope of the legislative power and whether such welfare calls for particular legislation is a question primarily for the legislature, and the courts can only override its decision when, after every allowance is made, no sufficient basis therefor is found." State v. Cullom, 138 La. 696, 70 So. 338.

In the note found at page 421 of 50 L. R. A. (N. S.), it is stated that the great weight of authority in this country is to the effect that the business of plumbing is so intimately connected with the public health, especially in large centers of population, as to be the proper subject of police regulation. ,

Of course, it is required in such legislation that all persons subject to such legislation shall be treated alike under like circumstances and conditions both in the privileges conferred and in the liabilities imposed. State v. Gardner, 58 Ohio St. 599, 51 N. E. 136, 41 L. R. A. 689, 65 Am. St. Rep. 785.

If the provisos contained in section 3 of the statute and the words "in cities of over ten thousand inhabitants" in the title could be eliminated, the statute would be one regulating the plumbing business in this state to which there could be found no legal objections.

It is the proviso which declares that master plumbers shall not be required to possess the certificate and the proviso which declares that the regulations of the state board shall not conflict with any rules or regulations already adopted by the sewerage and water board of the city of New Orleans, nor to conflict with the certificates presently being issued to master plumbers by the sewerage and water board of New Orleans, or the sewerage and water board or any other department of any city possessing a population of 10,000 or more, and the provision making the act apply to certain cities, that has brought about the attack on the legality of the statute as a whole.

If these provisos can be construed as an improper and unfair discrimination against the journeymen plumbers, and as creating an improper classification, then undoubtedly the statute would have to be declared unconstitutional as a whole.

As observed by the court below, the language referring to master plumbers is ambiguous and of somewhat doubtful meaning.

If it was susceptible of but one interpretation—the one placed on it by the trial judge —that master plumbers are not required to possess a certificate or license to engage in actual plumbing, then we would unhesitatingly say, under the authorities cited by defendant's counsel, that the statute was unconstitutional.

We are of opinion, however, that the statute may very properly be given a different interpretation and one which would be more in harmony with the obvious intent of the Legislature.

There is a well-recognized difference between a master plumber and a journeymen plumber, and this distinction is noted by the trial judge. The former is a plumber who employs plumbers, and the latter is one who does the actual work of plumbing. There could be no reason in law or in fact for specifically exempting a person who did not do any actual plumbing himself. Nor could there be any reason for requiring a master plumber to have a certificate so long as he did not do the work of an actual plumber.

The statute on its face, and without saying so, would simply not apply to such a person. So it appears to the court to have been the

intention of the lawmaker not to require a master plumber acting as such to take out a license nor to obtain a certificate as a journeymen plumber so long as he followed the business in which he is engaged—that of master plumber.

The words of the statute used in this connection, "otherwise qualified," can have no particular significance or determinate meaning in attempting to discover the intention of the Legislature. It is not going too far to say that it appears impossible to determine whether the words were thoughtlessly put into the act, whether they have reference to a master plumber possessing the qualifications as such, or whether they refer to the master plumber being qualified as a journeymen plumber. If the words could be understood as referring to the qualification or competency to do work as a journeymen plumber, then it might well be asked: Who is to determine whether a master plumber is qualified to do actual plumbing if he is not required to stand the examination test required of persons who do actual plumbing?

This proviso may well be construed as if it read, provided that nothing in this act shall be construed as to require master plumbers engaged in the said business (that of master plumbers) to possess said certificate or renewal, meaning of course the certificate of a journeymen plumber. Such an interpretation is the more reasonable, and it preserves the integrity of the statute, whereas any other interpretation would destroy the statute completely.

It is a well-recognized rule of interpretation that where a statute is of doubtful meaning, or is susceptible of conflicting and contrary interpretations, the one will be adopted which maintains the law in preference to one which will break it down.

We are not advised as to what rules or regulations the sewerage and water board may have had which are made controlling over the rules and regulations to be adopted under the statute under consideration.

Nor are we informed as to what manner of certificates were being issued by the sewerage and water board which were not to be interfered with by the provisions of this statute. It may be assumed, however, that such rules and regulations and such certificates referred to pertained to the same character of work which was under the control and supervision of the sewerage and water board.

There could be no improper discrimination, nor discrimination at all, in recognizing certificates issued by other and like competent authority as provided for in the statute.

There is nothing in the statute which would prevent the defendant from obtaining a certificate from the sewerage and water board, and nothing that would prevent any person holding a plumber's certificate from said board from obtaining one from the state board, if on examination he was entitled thereto.

We fail to see therefore where the defendant is discriminated against prejudicially.

The same might be said with reference to the application of the act to cities of 10,000 inhabitants or more.

The defendant has the same right to do plumbing work in towns and villages having a population under 10,000 without a plumber's license or certificate as any other citizen of the state, and no other citizen of the state in or outside of the city of Shreveport is permitted to come in competition with the defendant in doing plumbing work in said city unless he obtains a certificate and license as provided for in the statute.

All plumbers therefore are put on an equality whether they do that character of work in or outside of cities of 10,000 or more inhabitants.

What prompted the Legislature to restrict

the statute to the cities having a population of 10,000 or over is a matter with which the court is not concerned. It was a matter for the consideration of the Legislature, to determine whether towns and villages having a population less than that stated deserved or required the same protection as that afforded the larger cities. State v. Cullom, supra.

■ "Legislation which affects alike all persons pursuing the same business under the same conditions is not such class legislation as is prohibited by the Constitution of the United States or of the State." State v. Schlemmer, 42 La. Ann. 1166, 8 So. 307, 10 L. R. A. 135.

In McKeon v. Sumner Bldg. & Supply Co., 51 La. Ann. 1961, 26 So. 430, it was said:

"If a law is limited in some minor details, deemed proper by the legislature in carrying out a public policy, but otherwise general in its application, it is neither local nor special.

"Here it is operative in every city of a certain specified number. It embraces those that have the stated number now, or will have it in the future."

It is true the court in that case was dealing with the question of local or special laws, but the principle announced applies here.

If a law operative in every city of a specified number is not a local but a general law, so also is a law which is to be operative only in cities of a certain population not to be held discriminatory or as class legislation within the prohibition of the federal Constitution when all who are brought within the terms of the statute are treated alike.

It has been so frequently held by the Supreme Court of the United States that when a statute does not deny to a person or class of persons the same protection as is enjoyed by other persons or other classes in the same place and, under like conditions and circumstances, does not run counter to the federal

Constitution, that we deem it unnecessary to extend this discussion nor to make special reference to such cases.

Our conclusion is that the statute under consideration is not wanting in a legal and valid title and is not violative of any other provisions of the federal or state Constitution.

The judgment appealed from is annulled, the motion to quash is overruled, and the case is remanded to the lower court to be proceeded with as the law directs.

O'NIELL, C. J., absent, takes no part.