Dear Board Members:
You have requested an opinion concerning the authority and powers of the Amite River Basin Water Drainage and Conservation District ("District"), particularly in reference to home rule charters, coordination and authority over drainage and/or flood protection programs in municipalities and the parishes of the basin, etc. An additional question asked was whether the home rule charters could veto or enjoin operations to be implemented by the Board of Commissioners.
In response to your inquiry, the powers and authority of the District is found in La. R.S. 38:3301 et seq. More specifically, the broad powers enunciated within this statutory scheme are located in La. R.S. 38:3306 — 3309. La. R.S. 38:3306
reads in pertinent part, as follows:
 Section 3306. General Powers and Duties of the Board
 A. The Board shall adopt by-laws for its own government and for the government of its employees. It shall adopt rules or regulations for comprehensive drainage, flood control and water resources development, reservoir, and diversion canal systems. . .
 B. The Board shall be vested with the control of all drainage, flood control and water resources development, reservoir, and diversion canals in the district. . . . the Board shall have the authority to require the Office of Public Works to lay out, furnish estimates, and perform all engineering work necessary to the establishment of adequate drainage, flood control and water resources development.
 C. The Board shall have the authority to construct and maintain drainage works of all types either in cooperation with one or more parishes, municipalities, drainage districts, or other special districts within its territorial jurisdiction or upon its own undertaking.
D. . . .
 E. The Board shall have the authority to enter upon any lands, waters, and premises in the district for the purpose of making surveys, soundings, drillings, examinations, and appraisals, as it may deem necessary or convenient for the purposes of this chapter, and such shall not be deemed a trespass nor shall entry for such purpose be deemed a trespass under any expropriation proceeding which may be pending, provided that ten days registered notice in the case of resident owners and twenty-five days registered notice in the case of non-resident owners be given to the owner of record of such lands, waters, or premises as reflected by the parish assessment rules. . .
 F. The Board may expropriate property subject to and in accordance with R.S. 48:441-460, where applicable. . .
La. R.S. 38:3307, in general, provides that the Board of Commissioners may sue and be sued, buy and sell property, make and execute all contracts, and do and perform all things necessary to carry out the objects of this chapter. La. R.S.38:3308 gives the Commission the authority to issue bonds, and La. R.S. 38:3309 vests the Board with the authority to levy a district drainage tax as provided by Article VI, Section 19 of the Constitution of Louisiana.
The statutes which apply to the District grant board powers to the Board. Briefly, these statutes purport to give the Board all the powers necessary to control, manage, and develop all public drainage, flood control and water resources development, reservoirs, and diversion canals in the district either in cooperation with the various political subdivisions within the district or upon its own undertaking.
Hence, the statutory scheme, notwithstanding any other provisions of the law to the contrary, grants authority over all drainage and flood control programs within the district either in cooperation with the parishes and municipalities within the basin, or upon its own initiative.
The constitutional provisions governing home rule charters are located in Article VI of the Louisiana Constitution of 1974. La. R.S. 38:3301, et seq. The pertinent provisions are Sections 6 and 9. Article 6, section 6 reads as follows:
 The legislature shall enact no law the effect of which changes or affects the structure and organization or the particular distribution and redistribution of the powers and functions of any local governmental subdivision which operates under home rule charter.
The above section appears to prohibit the legislature from enacting the statutory schemes of the District, if the effect of these laws would affect the organization and powers of the local governments within the district. In this instance, if there is a conflict between municipal or parish flood control regulations within a home rule charter and those of the Board, then the home rule charter provisions should prevail, as it is afforded Constitutional protection. In other words, any attempt by the legislature to "change or affect the structure and organization" of the subdivision operating under a home rule charter would be unconstitutional and barred by Article 6, Section 6.
However, there is an exception to the restrictions or protections of Article 6, Section 6. Article 6, Section 9(B) provides, "Notwithstanding any provision of this Article, the police power of the state shall never be abridged." So, to circumvent or override whatever veto power the self-governing bodies within the district with home rule charter form of government may have, the police power would have to be invoked.
Francis v. Morial, 455 So.2d 1168 (La. 1984) is a case that is beneficial in resolving the interplay between home rule charter powers and the police power. Francis concerned an act of the legislature that altered the procedure for selecting members of a home rule municipality's administrative board. At issue was whether this act should be upheld as a reasonable exercise of the state's police power or stricken as an interference with home rule charter powers and functions prohibited by the state constitution. The act of the legislature was held unconstitutional in this case because it changed the distribution and organization of home rule powers and functions and was not reasonably necessary for the accomplishment of a legitimate object of the police power.
In resolving the home rule/police power controversy, Francis discusses the basis for each:
 "Section 6 was added to the local government article to protect home rule charter governments from unwarrantable interference in their internal affairs by state government."
 455 So.2d 1168, 1171
The police power exception located in Article VI, Section 9(B) is provided
 "to preclude the danger that the powers and defenses afforded local government would be used to deprive the state government of its necessary powers," 455 So.2d 1168, 1172
The key to resolving the conflict hinges on the issue of whether the action is a valid exercise of the police power. The precise definition of what constitutes a valid exercise of the police power is not readily available and the court recognizes this:
 "Although the police power is not susceptible to precise definition except on a case by case basis, it has been described generally as the inherent power of the state to govern persons and things, within constitutional limits, for the promotion of general security, health, morals and welfare. 455 So.2d 1168, 1172, See also, Fernandez v. Alfred, 203 La. 111, 13 So.2d 483 (La. 1943); State v. Mallory, 168 La. 742, 123 So. 310 (La. 1929).
Further on, the court notes that
 "To sustain legislation under the police power, the courts must be able to see that its operation tends in some degree to prevent an offense or evil or otherwise to preserve health, morals, safety or welfare." 455 So.2d 1168 at 1172, 1173; See also, Eros v. Powell, 342, 68 So. 632 (La. 1915).
Additionally,
 "To be truly in the welfare, therefore, legislation must confer upon the public benefits commensurate with its burdens upon other protected interests." 455 So.2d 505 (La. 1959).
In Francis, the "benefits/burdens" test was not met and the legislation was ruled an invalid exercise of the police power. Also, Francis, recognizes
 "That home rule powers, functions and immunities should be considered fairly, genuinely and reasonably and any claimed exception to them should be given careful scrutiny by the courts. (Emphasis Added). 455 So.2d 1168, 1173
So, any claimed exception to the home rule powers will be carefully scrutinized by the courts. In order to prevail, the exception must provide benefits commensurate with the burdens it creates and must be a valid exercise of the police power.
In sum, Francis recognizes the constitutional protection afforded home rule charter forms of government, and the intervention by the state in seeking to regulate the home rule governments, was held unconstitutional.
Francis can be distinguished from the present situation. The proposed benefits in Francis in allocating regulatory authority over the selection of members to a administrative board of the City of New Orleans did not outweigh the burdens imposed by the infringement upon the self-governing provisions of the home rule charter. The benefits were so insubstantial, if at all existent, such as not to warrant this intrusion upon constitutionally protected home rule powers. Whereas, in the present situation, implementation of a comprehensive flood and drainage control program for the flood prone areas of the Amite River Basin would provide substantial benefits that have a greater likelihood of outweighing any alleged burdens that it may create on the various municipalities and parishes within the district.
In support of this contention is State v. Walmsley,162 So. 826 (La. 1935). Walmsley concerned the constitutionality of an act of the legislature which recreated and reconstituted the membership of the New Orleans Sewerage and Water Board and provided for the "construction, control, maintenance, and operation of a public water system and a public sewerage system for the City of New Orleans. . .". 162 So. 826, 828
One argument made as to the invalidity of the act was that the act violated the so-called "home rule" provision of the constitution as found in Section 22 of Article 14 of the Louisiana Constitution of 1921. In citing State v. Flower 49 La. Ann. 1199, 22 So. 623 the court reflects upon the balance between home rule powers and the police power.
 "But the question is whether the right thus conferred on the citizens does not admit of qualifications when sought to be applied to governmental functions exerted within the limits of the city, but of the highest importance and of more than local concern. . . It has never been supposed that the state has parted with all legislative control of such subjects by the provision in the constitution giving to the citizens of New Orleans the appointment of the officers required for the police administration of the city. The police power given to the state to protect the public health, we cannot appreciate, is to be abridged by a constitutional provision dealing with the ordinary functions of the police administration of the city and confiding such duties to the agent selected by the citizens." 162 So. 826, 845 (Emphasis Added.)
Walmsley also cites Nichols in support of its decision that the legislative act was not in violation of the home rule charter of the City of New Orleans. In Nichols v. Shakespeare, 41 La. Ann. 156, 6 So. 592, it is said:
 "In its public capacity as a part of the state machinery, the corporation of the City of New Orleans owes a responsibility to the state government in the performance of acts for the public benefit, and in the regulation of this responsibility — the manner in which these acts shall be done, and by whom — the authority of the state is supreme." 162 So. 826, 845.
Walmsley held that the act did not violate the constitutionally protected home rule charter of the City of New Orleans and recognized the need for the state to regulate the sewerage and drainage of the City of New Orleans.
In conclusion, it is the opinion of our office that the District has legitimate authority and powers to implement a comprehensive drainage and flood control program for the district. Further, in the event of a conflict between the various municipal or parish home rule charters and the operations to be implemented by the Board of Commissioners, the Board will prevail provided its actions are within the scope of a valid exercise of the State's police powers, the benefits of which are commensurate with the burdens imposed. Flood and drainage control of an entire region of the state that is prone to flooding takes precedence over self-contained drainage systems within individual municipalities or parishes.
If we can be of further assistance with this matter please do not hesitate to contact our office.
Very truly yours,
 RICHARD P. IEYOUB Attorney General
BY: FREDERICK C. WHITROCK Assistant Attorney General FCW/mm