(120 So. 290)

No. 29143.

## CITY OF SHREVEPORT v. KANSAS CITY, S. & G. RY. CO.

Jan. 2, 1929.

Rehearing Denied Jan. 28, 1929.

F. H. Moore, of Kansas City, Mo., and Wilkinson, Lewis & Wilkinson, of Shreveport, for appellant.

B. F. Roberts, of Shreveport, for appellee.

LAND, J. The present suit has been instituted by the city of Shreveport to compel the Kansas City, Shreveport & Gulf Railway Company to remove from Marshall street two sets of piers supporting an overhead bridge, constructed over that street by defendant company.

Judgment was rendered in favor of the city ordering the piers removed, and defendant company has appealed.

Ordinance No. 11 of the city of Shreveport, adopted on October 10, 1905, grants to the Kansas City, Shreveport & Gulf Railway Company the right "to construct, build and operate in perpetuity an additional standard gauge railroad track on Lake Street, from Commerce Street to Marshall Street, with the right to cross all intervening streets and alleys, said streets being Louisiana, McNeil and Marshall Streets, the latter street to be crossed by an overhead bridge, or viaduct, supported by sets of piers resting on the banquette of said Marshall Street, *with an encroachment on the paved portion of the street*, as shown on blue print thereof hereto annexed and made part hereof, and the said overhead bridge shall be thus supported and maintained *in perpetuity, without the right of repeal or modification*."

As a consideration for the grant, the Kansas City, Shreveport & Gulf Railway Company agreed in the ordinance to pay for the paving of that portion of Lake street, outside its tracks, between Common street and Louisiana street; to remove, within 60 days, "the present pier now supporting its overhead bridge across said street"; and to reconstruct and remodel the bridge, in conformity to the rights granted in the ordinance. It is declared in the ordinance: "When this ordinance is accepted by said railway company,

the same shall become *a contract* between said railway company and the City of Shreveport."

The original grant to cross Marshall street with a bridge was made to the Kansas City, Shreveport & Gulf Railway Company under the provisions of an ordinance adopted July 2, 1896, by the city council of the city of Shreveport, when the railroad first entered that city.

Defendant company opposes the removal of the piers, mainly on the ground that it has complied with the conditions of the ordinance passed by the city of Shreveport on October 10, 1905, and that the ordinance, after its acceptance, became a binding contract between the railway company and the city, and cannot now be repudiated or modified, without violating the Constitutions of the state and of the United States, particularly the Fourteenth Amendment to the latter Constitution.

The city of Shreveport, on the other hand, attacks the ordinance in question as null and void, on the ground that the city council attempted, by its provisions, to grant to defendant company, without authority to do so, the right to maintain in perpetuity an obstruction in Marshall street, through the erection of these piers as supports to the overhead bridge, and that their presence there is a violation of the right of the public to the free access and use of the street, and a constant menace to public safety.

At the date of the adoption of the ordinance in question, article 263 of the Constitution of 1898 was in force. It is provided in this article that: "The exercise of the police power of the State shall never be abridged nor so construed as to permit corporations to conduct their business in such manner as to infringe the equal rights of individuals or the general well-being of the State."

There was also in force, at the date of the adoption of this ordinance, Act 158 of 1898, the charter of the city of Shreveport. Section 11 of the city charter confers full power on the council to make and pass such ordinances as are necessary and proper: "To regulate and make improvements to the streets, alleys, public squares, wharves and other public property."

"To determine the completion and dimensions of the pavements of the streets, to fix the squaring, and to prevent any encroachment upon or stopping and obstructing the streets, alleys, public squares, levees, public roads, or any part of the landing or port of Shreveport, *and to order any object, whatever may be its value which may encumber said places, or prevent and embarrass the free use of same, to be torn down and removed,* or sold for whom it may concern, in the same manner *and after such notices* as shall be required by such regulations."

In Agurs v. McKellar, 129 La. 186, 55 So. 758, this section of the city charter has been construed, and the rights of the city of Shreveport thereunder have been defined as follows: "The above quoted provision of the charter of the City of Shreveport confers upon the council two separate and distinct powers: One, 'to prevent any encroachments upon or stopping and obstructing the streets'; and one, to 'order to be torn down and removed any object which may encumber the street or prevent and embarrass the free use of same.' The first of these powers looks to the future. It has reference to all attempts whatsoever at encroaching upon, or obstructing the street, be the encroachment or obstruction serious or insignificant, big or small. It may be exercised by the passage of a general ordinance instructing the street Commissioner to see to it that no future encroachments or obstructions are begun. *The second of these powers has reference to cases where, at some time in the past, with or without permission of the city authorities, through inadventure or otherwise,* some object has been constructed, in whole or in part,

upon the street, *and, because of the permission given,* or because of peculiar circumstances, or, indeed, simply because of the long acquiescence, *whereby conditions have been allowed to develop and interests to grow, it would be inequitable to disturb the existing situation unless the public interest actually required it. In the latter class of cases, and in the exercise of this second power, the City Council is authorized to order the object to be torn down and removed if it encumber the street or prevent and embarrass its free use."*

Prior to the institution of this suit, the city council found, "as a fact," in a resolution adopted by that body: "That the piers erected and maintained by the Kansas City Southern Railway Company in Marshall Street for the support of the bridge over said street, encumber said street and prevent and embarrass the use of same, and render the same unsafe for travel. That in order to restore to the public the free and safe use of said street, it is necessary that said piers be torn down and removed."

The finding of the city council in its resolution was fully sustained on the trial of the case by the testimony of the mayor and of the city engineer of the city of Shreveport.

But it is contended by the railway company that Ordinance No. 11 of October 10, 1905, goes much further than the mere granting by the city of permission for the construction and maintenance of the piers as supports to its overhead bridge, since the ordinance is a contract conferring upon the company the right to maintain these piers in Marshall street, and valuable consideration was paid by the company to the city for this right.

It is to be observed, in discussing this contention, that the ordinance in question grants to the railway company the right to maintain these piers, *"with an encroachment on the paved portion of Marshall Street in perpetuity, without the right of repeal or modification."*

It is to be further considered that, at the date of the grant, full police power had been delegated to the city of Shreveport *to prevent* "any encroachment upon or stopping and obstructing the streets, alleys," etc., as well as *to remove* "any object, whatever may be its value, which may encumber said places, or prevent and embarrass the free use of same."

Finally, it is to be considered that, at the date of the grant, it was the fixed public policy of the state, as announced in its organic law, that the exercise of its police power should never be abridged nor so construed "as to permit corporations to conduct their business in such manner as to infringe the equal rights of individuals or the general well being of the State."

All the inhabitants of a city or other place have equal rights in common to the use of streets, public walks, and the quays. R. C. C. art. 458. "Things which are for the common use of a city or other place, as streets and public squares, are likewise public things." R. C. C. art. 454.

If the ordinance in question be maintained, the control of the city of Shreveport over Marshall street, in the interest of, or for the benefit of, the public, would be entirely lost in perpetuity.

It was the plain duty of the city council, at the date of the adoption of the ordinance in question, to have protected the right of the public to the free access and use of Marshall street as a public place, under the police power expressly delegated to the city of Shreveport for that purpose.

It is clear, at even a casual glance, that the ordinance making the grant as to the piers is incompatible with the constitutional provision cited, as well as with the police power itself, expressly delegated to the city of Shreveport by the state for the protection of its streets for the public use.

Under such conditions, the ordinance granting to defendant company, "in perpetuity, without repeal or modification," the right of

encroachment with its piers on the paved portion of the street, can be regarded in no other light than as a mere futile attempt to barter away the police power of the municipality in that particular.

■ That an ordinance of this character does not create a valid and binding contract is well established by abundant authority.

■ No principle of constitutional law is better settled in this country than the principle that neither the Legislature nor the people themselves, much less their servants, can bargain away the public health, the public morals, or the public safety, since government is organized with a view to their preservation, and cannot divest itself of the power to provide for them. Stone v. Mississippi, 101 U. S. 814, 25 L. Ed. 1079; Mugler v. Kansas, 123 U. S. 562, 8 S. Ct. 273, 31 L. Ed. 205; New Orleans Gaslight Co. v. Drainage Commission, 197 U. S. 453, 25 S. Ct. 471, 49 L. Ed. 831.

■ The ordinance passed prior to this suit by the city council of the city of Shreveport, ordering the removal of the piers from Marshall street for the purpose of restoring to the public the free and safe use of the street is, manifestly, legislative action taken by that body in the legitimate exertion of the police power, delegated to the municipality by the state under section 11 of the city charter, Act 158 of 1898.

For this reason, it cannot be seriously contended in this case that the effect of this ordinance was to impair the obligation of the contract alleged to have been created by Ordinance No. 11 of October 10, 1905, or that the ordinance in question deprived defendant company of its property without adequate compensation previously paid.

■ It is well settled that neither the Fourteenth Amendment, nor any other amendment to the federal Constitution, interferes with the proper exercise of the police power by the state, or by its municipalities, acting under delegated and plenary authority. Barbier v. Connolly, 113 U. S. 27, 5 S. Ct. 357, 28 L. Ed. 923; L'Hote v. New Orleans, 177 U. S. 588, 20 S. Ct. 788, 44 L. Ed. 899; State v. McCormick, 142 La. 580, 77 So. 288, L. R. A. 1918C, 262; Lacoste v. Department of Conservation, 151 La. 909, 92 So. 381; State v. City of New Orleans, 151 La. 24, 91 So. 533.

■ The police power extends to all property located within the jurisdiction of the several states, as well as to all contracts made within such jurisdiction, if such contracts in their execution affect the public health, the public morals, or the public safety.

"The constitutional prohibition upon State laws impairing the obligation of contracts does not restrict the power of the State to protect the public health, the public morals, or the public safety, as the one or the other may be involved in the execution of such contracts. Rights and privileges arising from contracts with a State are subject to regulations for the protection of the public health, the public morals, and the public safety, in the same sense, and to the same extent, as are all contracts and all property, whether owned by natural persons or corporations." New Orleans Gaslight Co. v. Louisiana Light Co., 115 U. S. 650, 672, 6 S. Ct. 252, 264, 29 L. Ed. 516, 524; New Orleans Gaslight Co. v. Drainage Commission, 197 U. S. 453, 25 S. Ct. 471, 49 L. Ed. 831; Chicago & A. R. Co. v. Tranbarger, 238 U. S. 67, 35 S. Ct. 678, 59 L. Ed. 1204.

The contention, therefore, that the contract, claimed to have been created by Ordinance No. 11 of October 10, 1905, is an inviolable contract, because it contains a grant of rights to defendant company, under an ordinance of a municipality of the state, is not sound, in our opinion, in so far as the particular grant to erect and maintain in perpetuity the piers in Marshall street is concerned.

■ Defendant company does not pretend in this case that the removal of the piers will

have the effect of destroying the grant to operate its line of road across the viaduct over Marshall street, but alleges in its answer that such removal will result in signal damage to it, in the sum of $43,000. It appears from the evidence in the case that it will require this amount to rebuild an overhead bridge, so as to relocate the piers beyond the street line of Marshall street. It is argued in the brief of defendant company that the city of Shreveport should pay one-half of this cost, or at least the cost for paving Lake street, but no prayer to this effect is contained either in the original or in the supplemental answer filed by defendant company. Be that as it may, the piers are removed under the police power of the city of Shreveport, and not under the power of eminent domain, and the damage sustained is therefore damnum absque injuria.

This rule has not been changed by Act 55 of 1928, as the act does not apply to pending suits; while Act 51 of 1928 is appropriate only when a municipality, "in order to protect the public safety," orders a viaduct constructed and maintained over a surface crossing, and, even then, the act is merely permissive, and not compulsory, on the part of the municipality to pay one-half of the cost.

In the case of New Orleans Gaslight Co. v. Drainage Commission, 197 U. S. 453, 25 S. Ct. 471, 49 L. Ed. 831, the court declared that every reason of public policy requires that grants in the subsurface of streets shall be held subject to such reasonable regulations as the public health and safety may require, and held that "uncompensated obedience to a regulation enacted for the public safety under the police power of the state is not a taking of property without due compensation"— citing Chicago, B. & Q. R. Co. v. Chicago, 166 U. S. 226, 254, 17 S. Ct. 581, 41 L. Ed. 979, 990.

Act 158 of 1898, section 11, paragraph second, the city charter of Shreveport, provides for the tearing down and removal of

property, obstructing the free use of a public street, only after notice. Defendant company has had such notice, and is contesting in the present suit such right. The judgment in this case, ordering defendant company to remove the piers, was rendered, after a full opportunity to be heard, and after due proceedings had in the state court of competent jurisdiction. The city of Shreveport is here merely exercising its legitimate police power in the tearing down and removal of the piers in question. Under such conditions, defendant company cannot be heard to complain that its property is being taken without due process of law, in contravention of the Fourteenth Amendment to the Constitution of the United States. State v. Roy, 152 La. 940, 94 So. 703; State v. Jackson, 152 La. 656, 94 So. 150; Craig v. Werthmueller, 78 Iowa, 598, 43 N. W. 606.

It is competent for a state, in the exercise of its police power, to authorize a city council to destroy property without compensation to the owner. The destruction by legislative authority of private property for a public purpose, without previous adequate compensation, is not a taking of such property without due process of law, but is a competent exercise of the police power of the state. Louisiana State Board of A. & I. v. Tanzmann, 140 La. 756, 73 So. 854, L. R. A. 1917C, 894, Ann. Cas. 1917E, 217; City of New Orleans v. Charouleau, 121 La. 890, 46 So. 911, 18 L. R. A. (N. S.) 368, 126 Am. St. Rep. 332, 15 Ann. Cas. 46; Mugler v. Kansas, 123 U. S. 623, 8 S. Ct. 273, 31 L. Ed. 205; Lawton v. Steele, 152 U. S. 133, 14 S. Ct. 499, 38 L. Ed. 385; Balch v. Glenn, 85 Kan. 735, 119 P. 67, 43 L. R. A. (N. S.) 1080, Ann. Cas. 1913A, 406; State v. Main, 69 Conn. 123, 37 A. 80, 36 L. R. A. 623, 61 Am. St. Rep. 30; Grimes v. Eddy, 126 Mo. 168, 28 S. W. 756, 26 L. R. A. 638, 47 Am. St. Rep. 653; Cooley's Const. Lim., page 877.

In Shepherd v. Third Municipality of City of New Orleans, 6 Rob. 349, 41 Am. Dec. 269,

the court said: *"The street* and the banks of the river are *'loci publici'* out of commerce, and the municipal authorities are bound to see that the use of them by the public be not obstructed; but they have no power to allow any erection thereon which may render their use incommodious. They may, indeed, *temporarily tolerate* works thereon, which they may deem not injurious to the rights of the public; but no permission of a council can prevent a subsequent council *from putting an end to such toleration."*

The city of Shreveport has "tolerated" for the last 22 years the encroachment on Marshall street made by these piers, for which right defendant company compensated the city in the sum of $7,710.57, as payment for the paving on Lake street, as the company had bound itself to do under the provisions of Ordinance No. 11 of October 10, 1905. 20 years ago, the population of Shreveport was about 18,000. The traffic then on Marshall street was slow, in horse-drawn vehicles, and infrequent. The street was not paved, and was impassable in many places during the wet season.

Between property lines, Marshall street is 66 feet in width. 20 years ago, the traffic lane on the street was only 36 feet wide, with 15 foot sidewalks on either side. The piers of the viaduct on one side extended from the curb into the traffic lane of the street 3 feet and 3 inches, and on the other side 2 feet and 8 inches.

At the date of the institution of this suit, August 9, 1927, Marshall street had been widened to the extent of 50 feet, with 8 foot sidewalks on either side, and now the piers of the viaduct stand out in the traffic lane of the street 10 feet and 3 inches from the curb on one side, and 9 feet and 8 inches from the curb on the other.

20 years ago, a single track of a street car line ran under the viaduct over Marshall street. To-day, double tracks run there.

The population of Shreveport has increased to 80,000 inhabitants; and from 12,000 to 14,000 automobiles move over Marshall street each day. Even at the present time, the street is not more than wide enough to take care of two lines of vehicles between the street car tracks and the curb line. The piers of the overhead bridge now stand out in the street as a permanent obstruction and constant menace to public safety, as they prevent and embarrass the free use of the street.

Under this state of facts, it is clear that it is not inequitable to disturb the existing situation, as defendant company has had the benefit of the encroachment for over 20 years, and the public interest actually requires the removal of the piers.

In speaking of the police power in Hadacheck v. Sebastian, 239 U. S. 410, 36 S. Ct. 145 (60 L. Ed. 348, Ann. Cas. 1917B, 927), it is said: "A vested interest cannot be asserted against it because of conditions once obtaining. Chicago & A. R. Co. v. Tranbarger, 238 U. S. 67, 78, 35 S. Ct. 678, 59 L. Ed. 1204, 1211. To so hold would preclude development and fix a city forever in its primitive conditions. There must be progress, and if in its march private interests are in the way, they must yield to the good of the community."

Judgment affirmed.