(123 So. 648)

No. 29873.

### CITY OF NEW ORLEANS v. NEW ORLEANS PUBLIC SERVICE, Inc.

May 20, 1929. Rehearing Denied June 17, 1929.

Dufour, Rosen & Kammer, of New Orleans, for appellant.

B. I. Cahn, City Atty., and William F. Conkerton, both of New Orleans, for appellee.

OVERTON, J. This is a suit to force defendant to demolish a viaduct, owned and used by it for the passage of its street cars at the intersection of Franklin avenue and Florida Walk, over the tracks of the Southern Railway Company, and to require it to construct at that point, along Franklin avenue, at grade, a double line of tracks, to take the place of the single track, built on the viaduct.

The viaduct was built for the purpose of avoiding crossing, at grade, the tracks now used by the Southern Railway Company. The grounds chiefly relied on for the demolition of the viaduct are, first, that it was not constructed in accordance with the ordinance authorizing or directing its construction; secondly, that as constructed it permits of the laying of but one railroad track on it, which is insufficient for the present needs of the people in the part of the city served by the railway line crossing it; and, thirdly, that by reason of decay and the failure to keep it in proper repair the viaduct has become dangerous and unsafe.

The defense is a denial that the viaduct was not constructed as directed; a denial that one railway track, at that point, is insufficient for the needs of that section of the city; a denial that the viaduct is unsafe; a plea that, to require defendant to cross the Southern Railway tracks at grade would introduce a grave hazard, which the viaduct, since its construction, has eliminated; and that to require the demolition of the viaduct would be to deprive defendant of its property without due process of law, in violation of the federal and state Constitutions, and to impair defendant's contract rights with the city, in violation of section 10 of article 1 of the Constitution of the United States, and of section 15 of article 4 of the Constitution of this state, and a denial to defendant of the equal protection of the laws, in contravention of the Fourteenth Amendment to the Constitution of the United States.

The viaduct, with the exception of the approaches, was constructed in 1910, under the authority of Ordinance No. 6445, New Council Series, adopted in that year, which directed that the viaduct be so constructed as to embrace earthen embankment approaches of such height and width as not to exceed the neutral ground space on Franklin avenue, nor obstruct the roadways thereon. The embankments for the approaches, leading up to

the viaduct, were constructed in 1914. In 1926 petitions were addressed to the commission council of the city of New Orleans, asking, for various reasons, that the viaduct be demolished. The council caused an investigation to be made to ascertain the condition of the structure. Two examinations were made to determine its condition. The report made to the council indicated that the viaduct was becoming unsafe, though not so much so as to require the immediate cessation of traffic over it. As a result of the report, the council passed Ordinance No. 9709, Commission Council Series, on November 17, 1926, ordering defendant to remove the viaduct, and ordering it to construct, operate, and maintain a double line of tracks for the operation of its cars, at street level, along Franklin avenue and across Florida Walk, the tracks to be constructed in accordance with plans and specifications to be prepared by defendant, and approved by the commissioner of public utilities and the city engineer of New Orleans, the removal of the viaduct to be completed within one year after the passage of the ordinance. The year elapsed with no effort on the part of defendant to comply with the council's order. This suit is virtually an effort to enforce compliance with the ordinance.

The viaduct is of trestle construction, or in other words the track structure is built on piles. The first inspection, made at the instance of the council, showed that the viaduct was in an unsafe condition, primarily on account of the condition of the bents; that is, the supporting structures, which support the stringers and the track structure itself. At this inspection it appeared that the condition of the bents varied considerably. Some were in a satisfactory condition, while others, which supported the spans, were considerably rotted, and in others the piling that supported the caps, and in turn the track structure, had become rotten to such an extent as to leave nothing but a shell of the former piling. As to the foundation on the river side, the earth had subsided from the base of the pier to such a degree as to expose at least two or three rows of the piling that supported it. The front row of the piling had 12 piles, and of these 5 had so rotted as to make them dangerous. As to the second and third rows, the engineer making the inspection was unable, due to conditions, to inspect them, but felt that, as the piles there were exposed to the puddling action of rainwater, which might seep under and not drain away, as was the case with the piling in the first row, that the same condition existed there as in the first.

Not many days later, though after the ordinance condemning the viaduct had been passed, a second inspection was made. It was then found that the conditions existing at the first inspection had been somewhat improved by defendant, by reason of the removal, at its instance, of certain of the bents considered dangerous at the first inspection, but it was found that other bents were still in a dangerous condition. The work of replacement was found to be satisfactorily done, save in two instances, where the replaced piling failed to make proper contact, but in those instances the defective work had but little effect on the strength of the bridge. At this inspection 10 bents on the river side of the structure were found to be unsafe, and 6 on the Gentilly side, making a total of 16.

While the evidence offered by the defense shows that some of the piling was decayed, yet the tendency of the evidence offered by it is to the effect that the structure at no time was in a dangerous condition, notwithstanding it had been weakened by decay.

Our conclusion is that the evidence does

not justify us in holding that the structure may be properly regarded as safe, but, to the contrary, it should be regarded as unsafe, notwithstanding the repairs that have been made, although it is unlikely that there is immediate danger of a collapse.

■ The contention that the viaduct was not constructed according to the ordinance, authorizing or directing its construction, is based upon the contention that it is so built as to narrow the roadway by encroaching upon it, whereas the ordinance provides that the structure must be built approximately on the center line of Franklin avenue, and so as not to exceed the neutral ground, nor obstruct the roadways on that avenue. The evidence shows that on the river side of the structure the construction is such as to maintain the correct width between curves, that is to say, a width of 28 feet, but that at one point at the terminus of one of the embankments the roadway has been narrowed from 28 to 18 feet. It is not unlikely, however, that this condition is due, not to improper construction by defendant, but to a taking by plaintiff of 12 feet of the roadway for a sidewalk, about the time that the roadway was paved. Granting this to be the case, it does not follow, however, that plaintiff is not entitled to regulate the right granted to cross Florida Walk, so as to obtain, if necessary, the required width for the roadway.

The contention that the viaduct should be removed, because it is so constructed as to admit of but one railway track on it, when there should be two over it, to serve properly that section of the city served by the railway, crossing the viaduct, is scarcely sufficiently supported by the evidence to justify, of itself, the removal of the structure. The population of that section of the city, served by the railway line, has unquestionably considerably increased since the construction of the viaduct in 1910, and probably will continue to increase; but it does not appear to us that it has yet so increased as to call for the removal of the structure in order to provide for double tracks, though this may become necessary at some time in the future.

■ Plaintiff has power under its charter to open and keep open and free from obstruction its streets, and to authorize the use of them for railroads operated by horse, electricity, steam, or other motive power, and to regulate the same. Subsection 3 of section 6 of Act 159 of 1912; subsection 12 of section 1 of Act 93 of 1921. Plaintiff unquestionably has ample police power for the discharge of its functions, "including the power to enact and enforce all ordinances necessary for the protection of the lives and property, for the preservation of the health, and for the promotion of the comfort, convenience, and general welfare of its inhabitants, and including, specifically, the power to regulate the use of the streets and maintain them in a safe condition." City of New Orleans v. Le Blanc, 139 La. 113, 119, 71 So. 248, 250.

■ We feel from the evidence before us that the viaduct, due to decay, is not in a condition, notwithstanding the repairs made, that should be regarded as safe. Such being the case, it is obvious that something should be done to correct the situation. The commission council reached the conclusion that the viaduct should be removed and grade crossings constructed in its place, consisting of double tracks. The council evidently did not consider that repairs would solve the problem. We are not prepared to say that the council, which is intrusted, within reasonable limits, with power to determine what should be done, has erred in ordering the removal of the structure, but think that the evidence justifies the action of that body. The viaduct has been there a number of

years. The evidence of the city engineer leads to the conclusion that, if repairs were undertaken, they would have to be substantial repairs, and rather extensive. If repairs were undertaken, and proved to be adequate, they would doubtless result in leaving the roadway narrowed at the point indicated above, when the city should be in position to increase the roadway there to its proper width. Moreover, if the repairs proved to be adequate, they would perpetuate a viaduct, which is admittedly capable, due to its width, of accommodating only one railway track, when sooner or later, in all likelihood, another will be required. The city has power, under the facts of the case, to cause the demolition of the viaduct. Its action, in so directing, is not an unreasonable exercise of the police power. In changing the crossing from an overhead to a grade crossing, it is fair to assume that the city will see that proper precautions will be taken to avoid accidents. By ordering the change made, the city is not depriving defendant of its property without due process of law, in violation of the Fourteenth Amendment of the Constitution of the United States, nor of section 2 of article 1 of the Constitution of this state, nor. is the city impairing the obligation of defendant's contract with it, in violation of the Constitution of this state and that of the United States, for by ordering the removal defendant is legitimately exercising its police power, subject to which defendant holds its franchise. Chicago & Alton R. Co. v. Tranbarger, 238 U. S. 67, 35 S. Ct. 678, 59 L. Ed. 1204; City of Shreveport v. Kansas City, S. & G. R. Co., 167 La. 771, 120 So. 290.

For these reasons, the judgment appealed from is affirmed.

O'NIELL, C. J., absent, takes no part.