13 So.2d 483

**FERNANDEZ v. ALFORD et al.**
No. 36893.

April 12, 1943.

E. M. Heath, of New Orleans, for appellant.

Sam Monk Zelden and John J. Finnorn, both of New Orleans, for appellee.

Francis P. Burns, of New Orleans, amicus curiae.

HAMITER, Justice.

A judgment ordering the return of three pin-ball machines allegedly owned by him, and granting injunctive relief, is prayed for by plaintiff, Albert E. Fernandez, in this action instituted against Steve Alford and John E. DeArmond, Superintendent and Captain, respectively, of the Department of State Police.

The material allegations of his petition may be summarized as follows:

In the operation of a business known as the Central Coin Machine Company, plaintiff owns certain mechanical devices called pin-ball machines and places them in various establishments in the City of New Orleans under a lease and profit sharing arrangement with the proprietors. While three of his machines were in Al's Place, located at 5323 Franklin Avenue, on August 25, 1942, they were illegally seized and carried away, by certain police employees of the Department of State Police, acting under the instructions of its officers, Superintendent Alford and Captain DeArmond. Those officers and the other employees of said department, who have threatened to continue to seize his property, have never been requested by the chief executive officer or the chief police officer of the City of New Orleans to function in that city; and their actions are unlawful, arbitrary and discriminatory and in violation of the Louisiana and Federal Constitutions.

Defendants, on the return day of the rule requiring them to show cause why a preliminary injunction should not issue, filed numerous exceptions and an answer. One of the exceptions was overruled; the remainder were referred to the merits.

The answer shows that the officers of the Department of State Police seized certain gambling paraphernalia in Al's Place, including pin-ball machines, and delivered it to the proper municipal officers to be held as evidence in the case pending against Alfred Saucier who was arrested. Also, it admits that neither the chief executive officer nor the chief police officer of New Orleans requested the State Department to function in that city; and it declares that the seizing operations were conducted under orders of the Governor of Louisiana.

A trial of the rule was had on affidavits; and it resulted in a judgment ordering "that the Rule be made absolute, and, accordingly, that a preliminary Writ of Injunction issue herein enjoining and restraining Steve Alford, Superintendent of the Department of State Police, and John E. DeArmond, Captain of the Department of State Police, and/or each of them, and the police employees of the Department of State Police acting with and/or under their authority and instructions, from holding themselves out and/or from acting, functioning and operating as Police and Peace Officers in the City of New Orleans insofar as such acts, functions and operations relate to or are connected with the person and/or property of Albert E. Fernandez and/or his lessees, and/or the business owned and operated by said Fernandez known as the Central Coin Machine Company, and from in any way interfering with or molesting said Albert E. Fernandez, and/or his lessees and/or his business known as the Central Coin Machine Company, upon the Plaintiff, Albert E. Fernandez, furnishing bond according to law, in the sum of Five Hundred ($500.00) Dollars."

Defendants appealed from that judgment.

It is unnecessary for us to pass upon the various exceptions filed by defendants in view of the conclusion that we have reached and hereinafter announce.

Superintendent Alford of the Department of State Police, as shown by his affidavit and pursuant to an order from the Governor of Louisiana, instructed members of his department "to look around the City of New Orleans and wherever they found violation of the Gambling Laws to arrest the offenders, place them in the City Precinct Jails, take whatever property seized as evidence, and turn over to the proper municipal police authorities, and to otherwise cooperate with the Police Department of the City of New Orleans."

The written order of the Governor, to which reference is above made, reads as follows:

"Whereas, complaints have been received by me that a state of lawlessness exists in the City of New Orleans, and particularly that commercialized gambling is running rampant in that municipality, and that in spite of appeals to the local law enforcing agencies and officials, no effort is being made to correct the condition nor to suppress said gambling; and

"Whereas, these complaints come from persons of undoubted sincerity and integrity and of high standing and character, such as the New Orleans Ministerial Union, United States Army Officials, civic organizations and private citizens, so that there is no reason to doubt the existence of the conditions embodied in said complaints,

"Now, Therefore, by virtue of the power vested in me by law and particularly by Act No. 94 of 1936, as amended, I Hereby Direct and Order the Director of Public Safety, who is ex-officio Superintendent of State Police, from this date forward until further ordered, to act within the City of New Orleans, particularly for the purpose of suppressing commercialized gambling therein.

"In Testimony Whereof, I sign this order at the City of Baton Rouge, Louisiana, this 13th day of July, A. D. 1942.

"(Signed)  Sam H. Jones
"Governor of Louisiana."

Acting under the instructions of Superintendent Alford, Captain DeArmond, together with other employees of the Department of State Police, went into the City of New Orleans and caused to be arrested numerous persons whom he observed violating the gambling laws of the State of Louisiana. One of those offenders was Alfred Saucier, the owner and operator of Al's Place where there were located the three pin-ball machines allegedly being used for gambling purposes. The machines were seized and turned over to the property clerk of the New Orleans Police Department to be held as evidence.

The arrest of Saucier was made by the municipal police, and he was charged with violating Article 90 of the Louisiana Criminal Code of 1942 relative to gambling. This article, found in said Code under "Chapter 2. Offenses Affecting General Morality", provides:

"Gambling is the intentional conducting, or directly assisting in the conducting, as a business, of any game, contest, lottery, or contrivance whereby a person risks the loss of anything of value in order to realize a profit.

"Whoever commits the crime of gambling shall be fined not more than five hundred dollars, or imprisoned for not more than one year, or both."

Subsequently, the District Attorney for the Parish of Orleans, acting upon Captain DeArmond's affidavit, filed in the criminal district court of that parish a bill of information charging Alfred Saucier with the commission of the mentioned offense.

Act No. 94 of 1936, as its title shows, creates the Department of State Police and provides for its operation.

According to Section 16, as amended by Act 113 of 1940, the police employees of the department are required "to prevent and detect crime, to apprehend criminals, to enforce the criminal and traffic laws of the State, and to perform such other related duties as may be imposed upon them by the Legislature, and to this end, police employees of the department shall be peace officers and shall have in any part of the State the same powers with respect to criminal matters and the enforcement of the law relating thereto as sheriffs, constables, and police officers have in their respective jurisdictions". But such duties are subject to the provisions and restrictions of Sections 22 and 23 of the statute, hereinafter quoted.

Those employees, under Section 20, must cooperate with Federal authorities and with other police forces and State departments; and the superintendent may, when requested to do so, assist the chief police officer of any local government unit in the state in conducting criminal investigations.

Sections 22 and 23 provide restrictions with reference to their operations within municipalities, and read:

"Section 22. The police employees of the Department shall not be used or called upon for service within any municipality in any industrial dispute unless actual violence has occurred therein and then only either by order of the Governor or on the request of the chief executive officer of the municipality wherein the dispute has occurred, if such request is approved by the Governor. The restrictions on the actions of the police employees of the Department contained in this section shall not apply in the case of a municipality which has elected to operate under a contract pursuant to Section 24 hereof.

"Section 23. The police employees of the Department shall not act within the limits of any incorporated municipality which maintains a police force except (1) when in hot pursuit of an offender or suspected offender; or (2) when in search of an offender or suspected offender wanted for a crime committed outside of the limits of the municipality or when interviewing or seeking to interview a witness or a supposed witness to such a crime; or (3) when requested to act by the chief executive officer of the municipality in question or its chief police officer, as provided under Section 20; or (4) when ordered by the Governor to act within the municipality in question. The restrictions contained in this section on the actions of police employees of the Department shall not apply in the case of a municipality which has elected to operate under a contract pursuant to Section 24 hereof."

The referred to Section 24, authorizes the making of contracts, between officials of local governmental subdivisions of the state and the department's superintendent, under which the department may provide for police protection and the enforcement of both state laws and local ordinances in those subdivisions; and it further recites that any state employee assigned under such a contract shall not be subject to the restrictions contained in Sections 22 and 23. But the provisions of Section 24 are inapplicable to this case for the reason that the officials of the City of New Orleans have entered into no contract of that character.

With reference to the quoted Sections 22 and 23, counsel for plaintiff, in their brief, make the following observation:

"Obviously, the enacting clauses of these two sections are general in their language and objects, and unless their restrictive provisions are broadened by the several provisos, the police employees of the Department of State Police cannot justify their acts within the limits of the City of New Orleans, a municipality which admittedly maintains a police force."

Further they say:

"There can be no question that Section 22 and 23 are in pari materia, so that any attempt to utilize the fourth clause of Section 23 as a means of carving out an exception to the restrictions contained in both Sections must be considered in the light of the limitation placed on even the proviso embodied in Section 22.

"In short, the words 'when ordered by the Governor to act within the municipality in question' must be taken and construed as a saving clause applicable to those cases

wherein the Governor has acted under the circumstances described in Section 22.

"If it were otherwise, there would have been no reason for the enactment of Section 22."

Section 22, as we appreciate it, treats specifically and exclusively of the use of police employees of the state department in an industrial dispute in any municipality of the state; and it provides that such employees can not be so used, in that very special instant, unless (1) actual violence has occurred in the dispute and, additionally, unless (2) either the use of them has been ordered by the Governor, or it has been requested by the chief executive officer of the municipality in which the dispute has occurred and the Governor has approved that request. In other words, the section is applicable only to a single and particular event, an industrial dispute attended with the occurrence of actual violence.

The section that follows, however, is general in scope and relates to the use of the state police employees "within the limits of any incorporated municipality which maintains a police force". Those employees are prohibited generally from acting within such limits, unless there exists one or more of the conditions set forth in the four separate and distinct excepting clauses of that section.

Important to be noticed is the fact that the excepting clause No. 4 of Section 23, reading "when ordered by the Governor to act within the municipality in question", is in no manner qualified. If it were intend-

ed as a saving clause applicable to the previous section, as plaintiff contends, it seems to us that the Legislature would have added thereto the words "pursuant to the provisions of Section 22," or some similar language. In this connection we observe that the preceding excepting clause No. 3 of Section 23, which states "when requested to act by the chief executive officer of the municipality in question or its chief police officer", is so qualified; for it is followed by the phrase "as provided under Section 20."

Anent plaintiff's contention that if the fourth exception in Section 23 is not a saving clause there would have been no reason for the enactment of Section 22, it may be pointed out that the industrial dispute provisions pertain to any municipality of the state, regardless of whether or not it maintains a police force; whereas, Section 23 applies only to those municipalities having regular police departments. Thus, if Section 22 was not in the Act, the state employees could function and interfere in an industrial dispute in any municipality that has no police force, even though actual violence has not occurred therein and the Governor has neither ordered nor approved their functioning.

Our State Constitution, in Section 14 of Article 5, directs the Governor "to take care that the laws be faithfully executed." Unquestionably, the Legislature gave recognition to this Constitutional mandate when enacting Section 23 of the statute; and, through the excepting clause No. 4, it made provision for permitting the Governor to discharge the duty

there placed upon him. Of course, it could then presume, and no doubt did, that such official would order the police employees of the State Department to act within the limits of an incorporated municipality which maintains a police force only when required to fulfill his sworn obligation of compelling a compliance with the laws of our state.

The Legislature further recognized this constitutional duty of the State's chief executive in its enactment of Section 22. According to the provisions of that section, as above shown, the state police can be called upon for service in an industrial dispute in any municipality only when actual violence occurs and on the authorization of the Governor. In other words, he can protect, through the use of the state police, the safety of the public in any city of the state when it becomes jeopardized as a result of an industrial dispute. Without the existence of that unsafe condition, however, he is powerless to so intervene in the dispute.

■ Our conclusion, therefore, is that under Section 23 the police employees of the state department can act within the limits of any incorporated municipality which maintains a police force whenever the Governor, for the purpose of enforcing the laws of this state, orders them so to do. While under Section 22, those employees can not be used within any municipality in any industrial dispute, unless the Governor has either ordered or approved their use and, also, unless actual violence has occurred therein which makes necessary the restoring of law and order.

■ The police employees of the state department, in the case at bar, were ordered by the Governor to go into the City of New Orleans for the purpose of enforcing the Louisiana gambling laws; hence, such action was authorized by the provisions of Section 23 of the discussed statute, as we interpret them.

But plaintiff's counsel further contend that such an exercise of power on the part of the Governor is violative of the "home rule" provision, or Section 22 of Article 14, of the Louisiana Constitution of 1921, which reads:

"The electors of the City of New Orleans and of any political corporation which may be established within the territory now, or which may hereafter be embraced within the corporate limits of said city, shall have the right to choose their public officers. This section shall not prohibit the election of any officer by the Council or appointment by the Mayor, nor the filling of vacancies for the unexpired term as now or hereafter provided by law; nor shall it apply to the Board of Liquidation, City Debt, or to any Board of Civil Service Commissioners or Examiners; nor shall it be construed as restricting the police power of the State, or as prohibiting the Legislature from appointing or authorizing the appointment of, any board or commission with full authority in the City of New Orleans other than that of controlling the ordinary governmental functions of municipal government."

■ The quoted section purposes generally, as a proper analysis of it discloses,

to guarantee to the electors of the City of New Orleans, and of any political corporation embraced therein, the right to select the public officers who have and are charged with the exercise, administration and control of the ordinary governmental functions of municipal government. It is not to be construed, so it specifically points out, as restricting the police power of the state.

Police power, according to its generally accepted definition, encompasses the protection of lives, health and property of citizens and the preservation of good order and public morals. City of New Orleans v. Schick, 167 La. 674, 120 So. 47; City of Shreveport v. Kansas City S. & G. Railroad Company, 167 La. 771, 120 So. 290, 62 A.L.R. 1512; State v. Malory, 168 La. 742, 123 So. 310. It is a power inherent in every sovereignty to govern men and things; and thereunder the Legislature may, within Constitutional limits, prescribe regulations for the promotion of the public health, morals and general welfare. Union Ice & Coal Company v. Town of Ruston, 135 La. 898, 66 So. 262, L.R.A. 1915B, 859, Ann.Cas.1916C, 1274.

Any practice or business, the tendency of which is to weaken or corrupt the morals of those who follow it or to encourage idleness instead of industriousness is a legitimate subject for regulation or prohibition by the state. Among the vicious practices which may be regulated, suppressed or prevented under the state's police power is gambling in all its forms. 11 American Jurisprudence, Verbo Constitutional Law, Section 272.

Furthermore, "the exercise of the police power of the State shall never be abridged." Article 19, Section 18, Louisiana Constitution of 1921. This does not mean, as said in State v. City of New Orleans, 151 La. 24, 91 So. 533, 539, "that the police power of the state shall not be delegated to an administrative board or commission, or to a municipality or other political corporation. It means that the Legislature shall not irrevocably surrender the police power of the state, and that a delegation of any part of the police power to an administrative board or commission, or to a municipality or other political corporation, shall be always subject to revocation by the Legislature."

"Neither the Legislature nor the people themselves can bargain away the power to regulate the public health and morals, or legislative discretion concerning such regulation, and the power is inalienable even by express grant." State ex rel. Porterie v. Walmsley, 183 La. 139, 174, 162 So. 826, 837.

Moreover, "municipalities are established for public purposes alone, and by specific grant of charter rights by the Legislature are empowered to administer a part of the sovereign power of the state over such territory as the municipality may embrace. They are mere creatures of the Legislature and are entirely subject to the legislative will. Laws which establish and regulate municipal corporations are not contracts; they are ordinary acts of legislation, and the powers and authority which they confer are nothing more than mandates of the sovereign power, the state, and

those laws may be repealed or altered at the will of the Legislature, except so far as the repeal may affect the rights of third persons acquired under them." State ex rel. Porterie v. Walmsley, 183 La. 139, 170, 162 So. 826, 836.

In fact, powers so conferred may be imposed upon other agencies by the municipality's creator almost at pleasure. Board of Public Utilities in and for City of New Orleans v. New Orleans Railway & Light Company, 145 La. 308, 82 So. 280.

In enacting Act No. 94 of 1936, which creates and provides for the operation of the Department of State Police, the state, through its Legislature, displayed a valid exercise of its police power. The sovereign by that legislation was acting for the prevention and detection of crime, for the enforcement of the state's criminal and traffic laws, and, generally, for the promotion of the safety, good morals, and welfare of its citizens. This seems to be conceded by plaintiff, for, as the brief of his counsel states, he does not question the validity of the statute. But he does insist that "the Legislature did not intend to permit the Governor to override the duly elected or legally appointed officers of the City of New Orleans."

Neither do we think that the lawmakers had the intention, in enacting the statute, of authorizing the Governor to interfere with the ordinary governmental functions of municipal government; nor do we believe that the Governor has done that. Interference of that kind would be violative of the Constitution's home rule provision, above quoted, which preserves to the City of New Orleans the right to control its municipal affairs.

The enforcement of the state criminal laws, such as the Governor purposed to do through his instructions to the state police, is not an ordinary function of municipal government. Although the city has concurrent power in that enforcement, the state is primarily interested in it and responsible therefor. The infringement of such laws vitally affects not only the people of New Orleans, but also those of the entire state; and being of general state concern the sovereign, through its executive and by reason of his authority and sworn duty, can and must act to prevent it when necessary.

It may be observed that the complaint in this case is made by an individual and not by the officials of the City of New Orleans, who have apparently cooperated with the State Police in carrying out the mentioned order of the Governor. We express no opinion as to what our conclusion would be if the municipal authorities had protested and were here protesting the described action of the State Police.

The judgment of the trial court, in our opinion, is erroneous; therefore, for the reasons assigned, it is reversed, and the preliminary injunction issued herein is dissolved and set aside and plaintiff's suit is dismissed at his costs.

HIGGINS, J., concurs in decree for reasons assigned.

FOURNET, J., dissents and assigns reasons.

HIGGINS, Justice (concurring).

The undisputed facts in this case show that neither the Mayor of the City of New Orleans nor the Superintendent of Police objected to or protested against the State Police coming into the City of New Orleans, in order to suppress violations of State Gambling Laws. The members of the State Police Force requested the assistance of the members of the Police Force of the City of New Orleans and in the investigation of the violation of the Gambling Laws conducted by them jointly, the relator's pinball machines were seized and placed in the custody of the proper officials of the City. The City of New Orleans did not intervene in this case and is not a party to it in any way. Therefore, the rights of the City officials of the City of New Orleans cannot be adjudged in this proceeding. This Court has jurisdiction to consider only the legal issues raised by the facts of this case and any expression of opinion by the Court going beyond that point is obiter dicta.

The question presented in this case is whether or not the pinball machines were illegally seized through the joint efforts of the City and State Police. As the City officials and the Police Force co-operated with the State Police Force in enforcing the Gambling Laws of the State of Louisiana, the Court is without any authority or jurisdiction to decide whether or not the State Police on the general order of the Governor could make legal seizures in the City of New Orleans where the City officials objected and protested against the State Police operating in the City of New Orleans. As the facts in this case conclusively show that the seizure in question was made through the combined efforts of the City and State Police, it is, therefore, legal.

For these reasons, I concur in the decree.

FOURNET, Justice (dissenting).

I do not subscribe to the views expressed in the majority opinion construing Subsection 4 of Section 23 of Act No. 94 of 1936, as amended, whereby the authority of the state police force to exercise the police functions of the City of New Orleans, as well as of all other municipalities of the State of Louisiana, upon the mere fiat of the governor, is recognized. In my opinion, such construction renders the subsection unconstitutional, for it has the effect of amending the Charter of the City of New Orleans, wherein the state delegated this police authority within the territorial limits of New Orleans to officers of that city, without such object being indicated in the title of Act No. 94 of 1936.

I therefore respectfully dissent from the majority opinion.