McCALEB, Justice
(dissenting).
The fundamental error in the majority opinion consists in the assumption that the Department of Highways is taking and damaging the property rights of the public utility companies for which just compensation must be paid. The property rights which plaintiff is allegedly damaging are said to be the utilities’ franchise right to place and maintain their equipment on the streets of the City of Shreveport in connection with their businesses.
There can be no doubt that a franchise right of this sort is a property right which may be enforced, within certain limitations (see New Orleans Gaslight Co. v. Drainage Commission, 111 La. 838, 35 So. 929 and City of Shreveport v. Kansas City S. & G. Ry. Co., 167 La. 771, 120 So. 290, 62 A.L.R. 1512), by the grantee against the grantor. But it is a misconception of fact to say that plaintiff, in constructing the new highway over the streets of the- City of Shreveport and in requiring the utilities to remove their .property therefrom, is either taking or damaging the utilities’ property rights within the meaning and intendment of our constitutional guarantee that private property shall not be taken or damaged for public purposes without prior payment of just compensation. As a matter of fact, the contractual property right to house their equipment on city streets remains unimpaired. And this is so, notwithstanding that the City of Shreveport has discontinued the use of certain city streets as such, having consented that these streets be converted to controlled access highway purposes by the Department of Highways and that, as a direct result of the change, the utilities have become obliged to remove their property from the highway construction site.
The franchise right of the utilities to place and maintain their equipment on these particular streets of the city, could continue only for so long as the streets were in esse and during the time their grantor (the City of Shreveport) had the streets under its jurisdiction and control. When plaintiff, acting conformably with law (see R.S. 48:301 and R.S. 48:304), obtained the consent of the City of Shreveport to destroy these streets and use the space they occupied, together with other land, to construct a controlled-access highway, it (plaintiff) became vested with full power and control of the project just as though it had acquired title to the streets by 'expropriation or voluntary purchase. In these circumstances, the utilities are totally with *587 out any legal right to encumber the construction project and, as they have long since conceded, their franchise rights to maintain their equipment on the condemned streets has ended.[1]
Nevertheless, the utilities have contended, and successfully so, that the forced removal of their property from the right-of-way constituted a damaging of their franchise rights for which restitution is required by Section 2 of Article 1 of the Constitution of 1921. And they say that the measure of their compensation is the cost of removing their equipment from the highway project.
I find no merit in this postulation. It is to be borne in mind that the utilities do not hold a servitude or any other real right (jus in re) or even a lease (jus ad rem) on or in the streets of the City of Shreveport on which their property is located. But let me suppose that they did have some sort of a real right in the streets of the city which plaintiff has taken (if this were legally possible). Under such circumstances, what would be the measure of compensation due the utilities upon the expropriation of the imagined real right? They would be entitled, of course, to be paid for the market value of their real right and for such consequential or severance’ damages they would sustain by the taking.
But of what elements are these consequential or severance damages composed, under our law? Do those damages include the cost of removing personal property of the owner from the expropriated land?
The answer to these questions is found in a legion of cases which have discussed and clearly set forth the nature and elements of the severance damages included within the purview of Section 2 of Article 1 of our Constitution, to which an owner is entitled in expropi'iation cases. In Texas Pipe Line Company v. Barbe, 229 La. 191, 85 So.2d 260, the Court on second rehearing, in applying the uniform rule, quoted approvingly from American Tel. & Tel. Co. of Louisiana v. Maguire, 219 La. 740, 743, 54 So.2d 4, 5, Note 2, as follows:
“ ‘It is the well-settled jurisprudence that the damages allowable under Section 2 of Article 1 of the Constitution of 1921, resulting from expropriation *589 of property rights are the difference between the market value of the property for sale or rental purposes, immediately before and immediately after the expropriation. Mere consequential injuries to the owners arising from discomfort, disturbance, injury to business and the like are damnum absque injuria. See Harrison v. Louisiana Highway Commission, 191 La. 839, 186 So. 354 and cases there cited.’ ”
So it is seen that, even if it be assumed that plaintiff has taken or damaged some nebulous property right of the utilities, they would not be entitled to reimbursement under our law for the^costs expended by them in removing their property from the highway.
In the recent case of Rapides Parish School Board v. Nassif, 232 La. 218, 94 So. 2d 40, where the owner of a grocery store, whose property was expropriated for school purposes was insisting (like the utilities here) that she be allowed damages totalling $753.25, representing the cost of moving the store and equipment to another location, the Court, in rejecting recovery for these items on the ground that they were damnum absque injuria, quoted at length from McMahon v. St. Louis A. & T. R. Co., 41 La. Ann. 827, 6 So. 640 (1889). The McMahon case involved the effect to be given to Article 156 of the Constitution of 1879 which had changed the previous constitutions with respect to the payment for property taken for public purposes by adding thereto that compensation should also be paid for property damaged as a result of expropriation. The precise inquiry of the Court was directed to the nature of the damages allowable under the constitutional provision and it was concluded that, conformably with the views of the Supreme Court of the United States in City of Chicago v. Taylor, 125 U.S. 161, 8 S.Ct. 820, 31 L.Ed. 638, recovery was to be extended only to severance damages measured by the difference in value of the damaged property immediately before and immediately after the infliction of the damages. The Court said:
“The article 156 of the present (1879) Constitution (which is substantially the same as Section 2 of Article 1 of the Constitution of 1921), in providing that ‘private property shall not be taken or damaged for public purposes without adequate compensation/ etc., only extended its protecting shield over one additional injury and required compensation, not only for property taken, but also for property damaged.
“As in the case of a taking the measure of compensation is the value of the property taken, so in the case of darruage the measure of compensation is the diminution in value of the property.
“There is no warrant for extending the liability one whit beyond this. We are simply to inquire what damage has *591 been done to the property, i. e., to its value for rental and sale. Mere consequential damages to the owners arising from discomfort, disturbance, injury to business and the like, remain, as they zvere before, damna absque injuria, particular sacrifices which society has the right to inflict for the public good.” (Words in parenthesis and emphasis supplied).
Thus, it is manifest from the foregoing that the utility companies in this case are not entitled to recover the costs of removing their equipment from the highway on the theory that their property rights have been damaged by plaintiff and that these property rights come within the protection given by Section 2 of Article 1 of the Constitution.
In the view I take of the case—that there has been no expropriation of property rights of the utilities for which compensation must be paid—-it is not of importance to determine whether the Department of Highways has or has not been vested with police power.[2] Surely, plaintiff, having acquired the right-of-way and use of the city streets on which the utilities’ wires, poles and other property are situated, has the right to require the utilities to remove these obstructions to the construction work, irrespective of whether it has police power or not. ■
The contention that plaintiff has not been delegated' police power by the Legislature has been cleverly injected into the proceeding by counsel for the utilities in an endeavor to evade the effect of the decisions *593 in the New Orleans Gaslight case, 111 La. 838, 35 So. 929 and City of Shreveport v. Kansas City S. & G. Ry. Co., 167 La. 771, 120 So. 290, 62 A.L.R. 1512. Those cases are authority for the doctrine that, albeit a franchise given by a state or municipality to a private utility corporation to lay its pipes, rails, wires and other structures in and on a public highway is a property right which cannot be arbitrarily rescided, nevertheless the grantor may at any time require the removal or alteration of such structures by the grantee where, in the proper exercise of its police power, the public safety or general welfare makes it reasonably essential to effect the change. The reason for this rule is succinctly stated in 18 Am.Jur. Sec. 161 under the title “Eminent Domain”, thus:
“Such a franchise is, however, granted upon an implied condition that the structures laid by virtue of its authority shall not at any time interfere with any other public use to which the state may see fit to devote the way, and consequently the corporation maintaining such structures is not entitled to compensation when the disturbance or removal of the structures or an alteration of their location is made necessary by a change in the grade of the highway, or for the introduction therein of structures of some other character, or of the devotion of the way to some other public use.” (Emphasis mine).
Some of the cases cited in support of the text of American Jurisprudence, including the New Orleans Gaslight Company case, have been approved by the Supreme Court of the United States. These cases are applicable to the situation where the grantor of the contractual right is seeking to effect the change under a police regulation. In the case at bar, the position of the Department of Highways is much stronger because it has neither incurred a contractual obligation in favor of the utilities nor has it assumed the obligation of the City.
In sum, I find it most difficult to perceive the semblance of any legal theory whatsoever under which the utilities in this case conceive that the money of the taxpayers should be used to reimburse them for the, expense attendant to moving their property, from the public way.
I therefore respectfully dissent.

. Indeed, the position of the utilities is no different from that of an individual or corporation who is given the privilege (either gratuitously or for a consideration), to place, store, and maintain personal property on the real property of another. To illustrate—if A, the owner of real estate, allows or contracts with B to permit the latter to store furniture or other property in A’s house and, subsequently, A’s real estate is expropriated by O, a governmental agency, for public use could B recover from O tlie cost of removing his goods from the condemned premises on the theory that a property right had been invaded by the condemning authority? Of course not. Yet, that is exactly the end result of the contention of the utilities in the instant case.

. However, I feel impelled to say that the majority conclusion that police power has not been delegated to the Department of-Highways by the Legislature is incorrect and unrealistic. Examination need only be made of Sections 19 and 19.1 of Article 6 of our Constitution (which makes it mandatory for the Legislature to provide for the establishment and maintenance of a system of hard-surfaced state highways and bridges and creates a Board of Highways vesting it with general control, management, supervision and direction of the Department of Highways) and Chapter 1 of Title 48 of the Revised Statutes, which creates the Department of Highways conformably with the constitutional mandate, to make it perfectly evident that in the establishment of this governmental agency, which is given full control over the highway system of the State, the Legislature intended to and did delegate to this department all police power necessary for the fulfillment of the governmental purposes for which it was created. Specifically, R..S. 48:21 states, inter alia, that the functions of the Department shall be to administer, construct, improve,' maintain, repair and regulate the use of the state highway system and, in R.S. 48:26, under the caption “Incidental Powers”, it is provided that “* * * the. department may perform every act necessary, convenient, or incidental to the exercise of its power and authority, the discharge of its duties, or the performance of its functions.”
Thus, the Highway Department is a special state agency, invested by the sovereign with full control over its highway system and to say that it has not been ' granted all police power necessary to insure the performance of its duties and functions strikes me as patently fallacious.