Dear Brent:
I am in receipt of your request for an Attorney General's opinion concerning an "alternative school" that is being started in Evangeline Parish for the purpose of attempting to educate and rehabilitate students that have been expelled from various schools throughout the parish. You have indicated that the first stage of the project will be for special education students who have been expelled for serious violations. You have also indicated that the project, although partially funded by a federal grant, does not have enough funds to hire a full time policeman to be located on campus throughout the school day. The Superintendent is requesting that the police jury and all of the municipalities contribute to a pool to be used to pay the salary of a law enforcement officer on campus. You state that the Superintendent is of the opinion that all of the communities and rural areas of the parish will benefit from this school because the expelled teenagers will not be out on the streets unsupervised and possibly committing crime.
Specifically, you ask the following question:
 Can the various municipalities and the police jury of Evangeline Parish contribute to a fund solely for the purpose of paying the salary of a law enforcement officer at the Alternative School which is being created in Evangeline Parish and located in Ville Platte when the students in the school will be from throughout the parish?
The expenditure in question must be examined in light of ArticleVII, Section 14 of the 1974 Louisiana Constitution. It provides:
 Section 14. (A) Prohibited Uses. Except as otherwise provided by this constitution, the funds, credit, property, or things of value of the state or of any political subdivision shall not be loaned, pledged, or donated, to or for any person, association, or corporation, public or private. Neither the state nor a political subdivision shall subscribe to or purchase the stock of a corporation or association or for any private enterprise.
 (C) Cooperative Endeavors. For a public purpose, the state and its political subdivisions or political corporations may engage in cooperative endeavors with each other, with the United States or its agencies, or with any public or private association, corporation, or individual.
The following was discussed in Attorney General Opinion No. 97-471-A concerning Article VII, Section 14, as it concerns the expenditure of public funds:
 A very comprehensive analysis of the above Section, as it relates to the expenditure of public funds, was undertaken by this office in Attorney General Opinion No. 90-651. As noted therein, the constitutional norm for the lawful use of public funds and property is found in Section 14. As quoted above, Paragraph (A) generally prohibits the loan, pledge or donation of public funds.
 Paragraph (C) of Section 14 authorizes the State and its political subdivisions (i.e., the District Attorney) to engage in cooperative endeavors for a public purpose with other governmental agencies, public or private associations and corporations and/or individuals. However, Paragraph (C) merely supplements the prohibition against donations contained in Paragraph (A). It does not create an exemption or exception from the general constitutional norm. In other words, the cooperative endeavor must meet the general standards for the non-gratuitous alienation of public funds established in Paragraph (A). City of Port Allen v. Louisiana Risk Management, et al., 439 So.2d 399 (La. 1983) and Attorney General Opinion No. 90-651.
In City of Port Allen, the Supreme Court ruled:
 The cases that do exist [under La. Const. Art. IV § 12 (1921)] hold primarily that this section is violated whenever the state or a political subdivision seeks to give up something of value when it is under no legal obligation to do so. . . . .
* * *
 Section 14(C) does not help the state either. There is no indication that it is meant to be an exception to the rule of § 14(A); the exceptions are clearly contained in § 14(B). Thus, even if political subdivisions cooperate for a public purpose, they still may not give away their assets to other political subdivisions, the United States Government, or public or private associations or corporations, or to individuals merely for a `public purpose'. (Emphasis added.)
 The threshold requirement of the constitutional doctrine for distinguishing between invalid and lawful expenditures and transfers of public funds and property is the presence of a legal obligation or duty by the transferor to alienate said funds or property. See Beard-Poulan, Inc. v. Dept. Of Highways, 362 F. Supp. 547 (W.D.La. 1973) and Town of Brusly v. West Baton Rouge Parish Police Jury, 283 So.2d 288
(La.App. 1st Cir. 1973).
 This prerequisite is satisfied by the presence of a valid statute, ordinance, charter or contract. The vehicle by which the obligation is created may, nevertheless, be ultra vires or unconstitutional if it creates no binding legal obligation or if the obligation created is substantially inconsistent with, or beyond the scope of the District Attorney's authorized duties. Attorney General Opinion No. 90-651.
 As noted above, the requirement of a legal duty is the threshold, but not the only predicate for the constitutionality of the expenditure. Second, the expenditure must also be for a public purpose. Finally, the expenditure must create a public benefit proportionate to the cost (i.e., the amount expended). Attorney General Opinion Nos. 96-115, 93-787, 92-722, 92-127 and 90-651.
In Opinion No. 97-471-A, our office dealt with a similar issue. We considered whether the Jefferson Parish District Attorney's office could participate in the funding of the Jefferson Coalition for Alternative Schools. Our office recognized that:
 All public responsibilities and legal duties are not carefully crafted into our laws. Further, law enforcement cannot reasonably be divided among separate and distinct entities or agencies. Rather, practical considerations demand that law enforcement be multi-faceted and that governmental agencies work together in order to effectuate an effective and efficient criminal justice system. As you are aware, R.S. 16:1(B) provides that the District Attorneys throughout the State shall have charge of every criminal prosecution in his district.
LSA-R.S. 33:361 provides the following concerning municipal powers:
 A. Except as otherwise provided in this Part, a municipality shall be vested with all powers, rights, privileges, immunities, authorities, and duties heretofore possessed in accordance with all constitutional and statutory provisions with respect thereto. A municipality is further authorized to exercise any power and perform any function necessary, requisite, or proper for the management of its affairs not denied by law.
 B. The power to perform any function necessary, requisite, or proper for the management of its affairs shall specifically include the power to levy and collect taxes and to assume indebtedness as provided by law. In this regard, the board of aldermen of a municipality may levy and collect taxes, incur debt, and issue bonds and other evidences of indebtedness as authorized by law.
A city may enact and enforce necessary ordinances to protect lives and property and promote general welfare. City of NewOrleans v. New Orleans Public Service, 123 So. 648, affirmed50 S.Ct. 449, 281 U.S. 682, 74 L.Ed 1115.
LSA-R.S. 33:1236 provides for the powers and duties of the police juries and other parish governing authorities. The powers and duties are voluminous. Although they do not specifically include the power to police a school for the protection of its citizens, section 1 does provide that the police juries and other parish governing authorities shall have the power to make regulations for their own government.
In Opinion No. 94-471-A, our office found that a sufficient nexus existed upon which to base a cooperative endeavor agreement between the Jefferson Coalition for Alternative Schools and the Jefferson Parish District Attorney's Office. Our office opined that the participation of the District Attorney's Office ". . . would be directly related to the reduction of crimes committed by society's young people — a public purpose well within the domain of the District Attorney."
It is the opinion of this office that the municipalities of the parish can contribute to the cost of paying the salary of a law enforcement officer for the school as long as the municipalities benefit from the contribution. That is, for example, some of the children attending the school might be residents of the municipality making the contribution at some given time, or the school might be physically located in the municipality that is making the contribution. As long as there is a sufficient nexus between the municipality and the school, the contribution would be allowed. Assuming one of these two factors occurs, or some other reasonable basis, there would not be an Article VII, Section 14 violation.
In regard to the police jury making a contribution to the cost of the salary of a law enforcement officer, the powers and duties as set forth in LSA-R.S. 33:1236 appear to allow for such a donation.
I hope this opinion sufficiently addresses your concerns.
Very truly yours,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 BY: _____________________________ BETH CONRAD LANGSTON ASSISTANT ATTORNEY GENERAL
RPI/BCL/sc
DATE RECEIVED: 11/24/98BR
DATE RECEIVED: 12/04/98SHDATE RELEASED
BETH CONRAD LANGSTONASSISTANT ATTORNEY GENERAL